LONG CANYON PHASE II AND III HOMEOWNERS ASSOCIATION, INC., Appellant

v.

Chris CASHION and Lisa Cashion, Appellees

NO. 03–15–00498–CV

Court of Appeals of Texas, Austin.

Filed: March 3, 2017

---

William C. Davidson, Bradley Rockwell, Amy C. Welborn, Austin, for Chris Cashion and Lisa Cashion.

Adam Robertson, Amy M. Van Hoose, Mark B. Rabe, Frank Carroll III, Houston, for Long Canyon Phase II and III Homeowners Association, Inc.

Before Chief Justice Rose, Justices Pemberton and Field

## OPINION

Jeff Rose, Chief Justice

Long Canyon Phase II and III Homeowners Association, Inc. ("the HOA") appeals from an interlocutory order denying its motion to dismiss a suit by Chris and Lisa Cashion. The parties have for several years disputed whether the Cashions' alleged landscaping activities in a drainage easement violate the HOA's rules. After the HOA sent the Cashions a notice of intent to sue for non-compliance with those HOA rules, the Cashions sued the HOA[1] claiming damages from harassment, negligence, and severe emotional distress, as well as seeking injunctive and declaratory relief. The HOA moved to dismiss the Cashions' suit under the Texas Citizens' Participation Act (TCPA), arguing that the Cashions' suit infringed on the HOA's exercise of its rights to associate and to petition the government, as defined in the Act.[2] The district court denied the HOA's motion. We will reverse the trial court's order in part, render judgment dismissing certain of the Cashions' claims, and affirm the remainder of the order.

## Background

The Cashions are homeowners whose property is subject to covenants that mandate membership in the HOA and restrict landscaping activities in a drainage easement that runs across part of the Cashions' property. The Cashions recite a history of conflict dating to 2009 when the HOA refused to return their construction deposit on grounds that they had improperly cut trees in the easement. The Cashions assert that they sued the HOA and recovered the deposit.

The current dispute flared when the HOA sent the Cashions a letter dated December 18, 2014, asserting that the Cashions had unlawfully damaged the drainage easement. In the letter, the HOA board,

---

1. The Cashions also sued Association board members, but later nonsuited those claims.

2. *See* Tex. Civ. Prac. & Rem. Code § 27.003.

through counsel, threatened to fine the Cashions, file suit, and seek damages.

The Cashions replied by letter dated December 23, 2014, then filed this suit in the county court at law in February 2015. In their original petition, the Cashions complain that the HOA, acting in bad faith, "intentionally communicated through authorizing its attorney to write in a coarse and offensive manner, a letter addressed to the Cashions and by such action, [the HOA] and the Board intentionally annoyed and alarmed the Cashions on Christmas Eve."[3] The Cashions complain that the letter contained false and unsupported allegations regarding their conduct in the easement from July 2013 to December 2014. The Cashions also complain that the HOA breached its duty to supervise its representatives by allowing them to harass the Cashions over matters outside their power. They allege that the HOA monitored visitors, watched yardworkers, made their presence known, trespassed, and took pictures of the Cashions' property without consent. The Cashions complain that the HOA "acted with intent to cause emotional distress to the Cashions," which emotional distress "was severe."

The Cashions assert that the HOA filed suit in district court against them on April 1, 2015, they filed a plea in abatement in that suit, and the HOA then filed this motion to dismiss under the TCPA. The trial court denied the HOA's motion to dismiss without stating a basis. The HOA appeals this denial.

## TCPA Dismissal Procedure

"The purpose of the [Citizens Participation Act] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."[4] To that end, the TCPA provides a mechanism for dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association,"[5] as defined in the Act, and for which "the party bringing the legal action [cannot] establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question."[6] Texas courts' brief history in applying the broadly worded TCPA has not limited application of the Act's protections to weighty issues of great public concern. The dismissal mechanism of the statute has been applied in cases for fraud and barratry,[7] a suit for contamination of a water well,[8] a dispute between neighbors over a fence,[9] defamation claims arising from an employment dispute,[10] a snarl of

---

3. The Cashions' assertion elsewhere that they received the HOA's December 18 letter on Christmas Eve (December 24, 2014) is, at least if taken literally, facially at odds with the December 23, 2014 date on their letter replying to the HOA.

4. Tex. Civ. Prac. & Rem. Code § 27.002 ("Purpose").

5. *Id.* § 27.003(a).

6. *See id.* § 27.005(c) ("The court may not dismiss a legal action ... if the party bringing the legal action establishes by clear and spe-

cific evidence a prima facie case for each essential element of the claim in question.").

7. *See James v. Calkins,* 446 S.W.3d 135 (Tex. App.–Houston [1st Dist.] 2014, pet. denied).

8. *See In re Lipsky,* 460 S.W.3d 579 (Tex. 2015).

9. *See Serafine v. Blunt,* 466 S.W.3d 352 (Tex. App.–Austin 2015, no pet.).

10. *See Combined Law Enf't Ass'n of Tex. v. Sheffield,* No. 03-13-00105-CV, 2014 WL 411672 (Tex. App.–Austin Jan. 31, 2014, pet. denied) (mem. op.).

competing claims arising from discussions among horse breeders on social media,[11] and a host of other types of claims.

A party moving to dismiss under the TCPA must "show[ ] by a preponderance of the evidence that the [nonmovant's] legal action is based on, relates to, or is in response to the [movant]'s exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." [12] "Exercise of the right of free speech" is defined in the TCPA as "a communication made in connection with a matter of public concern." [13] "Exercise of the right to petition" is defined, in part, as "a communication in or pertaining to ... a judicial proceeding" and as "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." [14] Finally, "exercise of the right of association" is defined as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests," [15] with "communication" being separately defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." [16]

■ To avoid dismissal under a TCPA motion to dismiss, the nonmovant must "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." [17] But even where a prima facie case has been made, the trial court "shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nomovant's claim." [18] In a section titled "Evidence," the TCPA instructs, "In determining whether a legal action should be dismissed ..., the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." [19] We review de novo whether each party carried its assigned burden.[20]

## Discussion

The HOA's sole issue on appeal is that the trial court erred in denying the HOA's TCPA motion to dismiss. The HOA contends specifically that the Cashions' claims improperly infringe on the HOA's "exercise of the right to petition" because those claims are based on the HOA's letter giving notice of its intent to sue. The HOA also asserts that the Cashions' claims improperly infringe on its "exercise of the right of association" because the HOA's presuit notice was an exercise of the HOA's right to express, promote, pursue, and defend its common interest of preserving and protecting the drainage easements created by the neighborhood covenants.

**11.** *See Backes v. Misko,* 486 S.W.3d 7 (Tex. App.–Dallas 2015, pet. denied).

**12.** Tex. Civ. Prac. & Rem. Code § 27.005(b). These three rights are defined in Section 27.001.

**13.** *Id.* § 27.001(3).

**14.** *Id.* § 27.001(4)(A)(I).

**15.** *Id.* § 27.001(2).

**16.** *Id.* § 27.001(1).

**17.** *Id.* § 27.005(c).

**18.** *Id.* § 27.005(d).

**19.** *Id.* § 27.006(a).

**20.** *Serafine v. Blunt,* 466 S.W.3d 352, 357 (Tex. App.–Austin 2015, no pet.); *see Rehak Creative Servs., Inc. v. Witt,* 404 S.W.3d 716, 724–27 (Tex. App.–Houston [14th Dist.] 2013, pet. denied).

### Scope of the appeal

During the dismissal hearing, the HOA expressly withdrew the portion of its motion that challenged the Cashions' declaratory-judgment claims. Accordingly, the HOA's potential bases for reversal here are limited to the Cashions' remaining claims seeking monetary and injunctive relief, which are unquestionably "legal actions" potentially subject to dismissal under the TCPA.[21] The HOA's motion sought dismissal of these "legal actions" on the ground that each was predicated factually on the "presuit notice" or "HOA" letter dated December 18, 2014, and that this letter was TCPA-protected expression. In the letter, the HOA board, through counsel, threatens to fine the Cashions $8,000 and sue them for $10,000 in damages, plus attorney's fees, and to place a lien on their property to secure payment of the judgment, based on alleged violations of deed restrictions that limited the Cashions' use or maintenance of a portion of their property that was burdened by a drainage easement. The HOA raised no other communication or expression on its part as the basis for its motion, and this narrow focus has important corresponding implications for the scope of relief the HOA can obtain on appeal.

The HOA's motion sought dismissal of the Cashions' monetary and injunctive claims in their entirety under the premise that the claims complained solely of the December 18 letter. A review of the evidence—viewed in the light most favorable to the Cashions, as required by the governing standard of review—reveals that the factual bases for the Cashion's claims are much broader than this. Although the Cashions do complain about the letter in their live petition (terming it a "coarse and offensive" missive calculated to "alarm[ ]," "caus[e] emotional distress," and even ruin their Christmas holidays), they present it as a component of a larger "pattern of harassment" and "bad faith" or "ultra vires" conduct by the HOA board and "some of the [HOA] members." This conduct, the Cashions alleged, has included "constantly monitor[ing] visitors of the Cashions, watch[ing] whenever someone comes to work in the [Cashions'] yard, and "mak[ing] their presence known," as well as "trespass[ing] on the Cashions' property and tak[ing] pictures [there] without their consent."

In addition to the Cashions' pleadings, the trial court had other evidence before it that provided further background and context regarding the nature of the parties' dispute and the alleged "harassment" by the HOA, including correspondence between the parties and an affidavit from Chris Cashion.[22] Viewed in the light most favorable to the Cashions, this proof reflects that the Cashions and the HOA had previously litigated the same issues regarding their use of the drainage easement in 2009 after the HOA had refused to return a $10,000 deposit, ostensibly to sanction the Cashions for deed-restriction violations, and that the Cashions had prevailed, recovering both their deposit and

---

**21.** In terms of the TCPA's definition of "legal action," these claims would "request[ ] legal or equitable relief" (money damages and injunctive relief) through "a lawsuit," "cause of action," "petition," or "other judicial pleading or filing." *See* Tex. Civ. Prac. & Rem. Code§ 27.001(6).

**22.** This affidavit accompanied a written response by the Cashions to the HOA's motion.

Citing a discrepancy in the file-stamped copy of the response contained in the clerk's record, the HOA insinuates that the Cashions failed to respond until after the trial court had already ruled. To the contrary, the reporter's record from the hearing reflects that the Cashions had presented their response to the trial court by that time.

attorney's fees. In the interim, the Cashions maintained, the HOA had inconsistently and arbitrarily advised the Cashions that certain activities were permitted in the easement (e.g., planting grass or removing arborist-certified dead trees) only to blindside them later with complaints about these same acts, and had similarly singled them out for disparate treatment compared to other residents who had been permitted even more intensive uses of the drainage easements on their respective properties. The Cashions further complained that following the HOA's December 18 letter, the association had refused to explain or elaborate precisely why or how any conduct by them, including conduct that HOA representatives had permitted, amounted to violations of the deed restrictions in the HOA's view. This collective body of evidence, in turn, tended to elaborate upon and support a central theme of the Cashions in their lawsuit-that in "harassing" the Cashions, the HOA's actors has acted out of personal animus or spite rather than in any good-faith belief that the Cashions had actually committed any of the deed-restriction violations of which they were accused, or at least in any good-faith belief that the alleged violations would survive the preclusive effect of the 2009 judgment.

While the HOA disputes both the factual and legal merit of the Cashions' allegations, what matters initially is that the Cashions complain of a much broader course of conduct by the HOA than merely sending the December 18 letter. And as for those factual bases beyond the December 18 letter, the HOA did not preserve any ground for dismissal in their motion.[23] Accordingly, we hold that the HOA has preserved a TCPA challenge to the Cashions' monetary and injunctive claims only to the limited extent those claims are factually predicated on the December 18 letter. Therefore, even though the letter is, as we conclude below, a TCPA-protected expression, we will affirm the trial court's denial of the TCPA motion to dismiss as to the HOA's other complained-of conduct.

**The HOA met its initial burden**

 Regarding the Cashions' complaints that arise from the December 18 HOA letter, the parties join issue on appeal only over whether the December 18 letter was the HOA's "exercise of the right to petition" or "exercise of the right of association."[24] The HOA argues that the

---

23. In this respect, this case is similar to *Serafine*, in which this Court distinguished between underlying factual bases of the nonmovant's legal actions that the movant had claimed as TCPA-protected expression (the filing of a lawsuit and related lis pendens, which the movant had asserted (and the Court later agreed) were the "exercise of the right to petition") versus additional underlying allegations of broader harassment (including some resembling the HOA's alleged conduct here) that the movant had not addressed in her motion. *See Serafine*, 466 S.W.3d at 359-60. The Court held that the movant had met her initial burden only as to the former allegations and had waived any TCPA challenge to the latter. *See id.* at 360 ("We conclude ... that the Blunts' tortious-interference counterclaim is in part based on, related to, or in response to Serafine's filing of the

suit and that their fraudulent-lien counterclaim is based on, related to, or in response to Serafine's filing of the lis pendens, both of which filings are exercises of Serafine's 'right to petition' as the Act defines that term. ... However, to the extent that the Blunts' tortious-interference counterclaim is based in part on Serafine's alleged threats made outside the context of the lawsuit, Serafine has not satisfied her initial burden to show that these portions of the Blunts' counterclaims are subject to the Act.").

24. The Cashions do not dispute that the HOA met its initial burden as to the remaining elements. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b) (requiring movant to "show[ ] by a preponderance of the evidence that the legal action is based on, relates to, or is in response

Property Code's requirement that it send notice before filing suit [25] means that its December 18 presuit letter is "a communication ... pertaining to" "a judicial proceeding," and therefore falls within the protections afforded to the right to petition the government.[26] We disagree. The ordinary meaning of the phrase "judicial proceeding"—versus, e.g., "future," "potential," or "threatened" judicial proceeding— is an actual, pending judicial proceeding.[27] The December 18 letter, although undoubtedly a "communication," [28] was a *presuit* demand letter. As such, it did not pertain to "a judicial proceeding" so as to be the "exercise of the right to petition" under the TCPA definition.[29]

Nevertheless, the December 18 letter is an exercise of the HOA's right to petition under the TCPA because it falls under subsection (E) of the TCPA's definition of the "exercise of the right to petition," which is "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." [30] Subsection (E) reflects legislative intent that the definition be consistent with and incorporate the nature and scope of the "right to petition" that had been established in constitutional jurisprudence. [31] The established understanding under First Amendment jurisprudence, both now and at the time of the TCPA's enactment, was that presuit demand letters generally fall within the "right to petition," [32] although there is a

to the party's exercise of" one of the three protected rights).

**25.** *See* Tex. Prop. Code § 209.006(a) ("Before a property owners' association may ... file a suit against an owner ..., the association or its agent must give written notice to the owner by certified mail.").

**26.** *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(I) (defining "exercise of the right to petition").

**27.** *See Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728–29 (Tex. App.–Dallas 2016, pet. denied) (citing Tex. R. Civ. P. 22 ("A civil suit ... shall be commenced by a petition filed in the office of the clerk."); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); *Judicial proceeding, Black's Law Dictionary* (10th ed. 2014)); *see also TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439, 441 (Tex. 2011) ("We presume that the legislature chooses a statutes' language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008)).

**28.** *See* Tex. Civ. Prac. & Rem. Code 27.001(1) (defining "communication" as "the making or submitting of a statement or document in any form or medium, including ... written").

**29.** *See Levatino*, 486 S.W.3d at 728–29 (holding that presuit demand letters did not pertain to "judicial proceeding" because there was no pending litigation when sent).

**30.** Tex. Civ. Prac. & Rem. Code 27.001(4)(E).

**31.** *See Serafine*, 466 S.W.3d at 377–82 (Pemberton, J., concurring).

**32.** *See id.* (citing as examples *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 351 (9th Cir. 2014) ("Under the *Noerr-Pennington* doctrine, [cease and desist letters and threats of litigation are] immune from suit unless the threatened lawsuit was a "sham." (citations omitted)); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) ("Conduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr-Pennington* doctrine.") (citation omitted); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936 (9th Cir. 2006) ("We conclude that restrictions on presuit demand letters may ... raise substantial Petition Clause issues if, on examination, such restrictions could impair the right of access to the courts protected by the First Amendment."); *Primetime 24 Joint Venture v. National Broad. Co.*, 219 F.3d 92, 99–100 (2d Cir. 2000) ("Courts have extended *Noerr-Pennington* to encompass concerted efforts incident to litigation, such as prelitiga-

federal circuit court case holding otherwise in the view that the petition right embraces only communications made to or toward government and not those between private parties.[33] While the majority rule indeed appears to be founded on a policy-laden notion of courts providing "breathing space" for the underlying right as opposed to specific support in constitutional text,[34] we must presume that the Legislature intended this view of the protection's scope to control nonetheless.[35]

 The Cashions argue that the HOA's underlying allegation of deed-restriction violations (the subject of the litigation being threatened) were meritless and made in bad faith. This is arguably an assertion that the HOA's underlying suit would constitute "sham petitioning"—that which is "objectively baseless" and seeks to harm a rival directly through the governmental process itself rather than the result ostensibly sought—a category of

speech that falls outside First Amendment protection.[36] However, even assuming without deciding that the sham-petitioning exception applies, while the Cashion's evidence might support an implied finding that the HOA acted with the motives characteristic of sham litigation, their evidence falls short of proof that the allegations were "objectively baseless," which requires that "no reasonable litigant could realistically expect success on the merits." [37] Consequently, the trial court could only conclude on this record that the December 18 letter sufficed as the "exercise of the right to petition" and, in turn, that the HOA had met its initial burden of showing by a preponderance of the evidence that the Cashions' claims are in part based on, relate to, or are in response to the HOA's exercise of its right to petition. [38] In their response to the motion to dismiss, the Cashions noted: "Plaintiffs filed this suit in response to the continued pattern of harassment by the HOA and the Board

tion 'threat letters,' . . . and settlement offers.") (citations omitted); *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1344 (Fed. Cir. 1999)(treating "actual or threatened infringement suits" the same for purposes of *Noerr-Pennington* immunity); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992) (noting that "threats, no less than the actual initiation of litigation, do not violate the Sherman Act") (citation omitted); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) (holding that "publicity and threats of litigation were protected by petitioning immunity"); *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F.Supp.2d 889, 896–900 (D. Minn. 2012) (observing that "[o]f the seven . . . circuit courts that have encountered this question, six have found that the *Noerr-Pennington* doctrine immunizes pre-suit demand letters, so long as those demand letters are not a 'sham.' ") (citations omitted).

**33.** *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 886, 888–93 (10th Cir. 2000) (en banc).

**34.** *See Sosa*, 437 F.3d at 931–32 ("In determining whether the burdened conduct falls

under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition." (citing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 531, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002)); *Select Comfort*, 838 F.Supp.2d at 897 (same).

**35.** *See In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding) (noting presumption that Legislature crafted statute " 'with complete knowledge of the existing law and with reference to it.' " (quoting *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)).

**36.** *See Serafine*, 466 S.W.3d at 366 (Pemberton, J., concurring) (citing *Professional Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)).

**37.** *Id.* at 383–84 (citing *Professional Real Estate Inv'rs*, 508 U.S. at 62, 113 S.Ct. 1920).

**38.** *See* Tex. Civ. Prac. & Rem. Code § 27.005.

*that is partly represented by the Letter."*[39] (Emphasis added.)

Because the December 18 letter qualifies as an "exercise of the right to petition," we need not address the HOA's additional argument that the letter qualifies as the HOA's "exercise of the right of association."[40]

**Prima facie case**

 The HOA having met its initial burden—i.e., showing that the Cashions' claims arising from the December 18 HOA letter are based on, related to, or in response to the HOA's exercise of protected rights—the burden shifted to the Cashions to establish by clear and specific evidence a prima facie case for each essential element of their claims.[41] A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted."[42] "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'"[43] Conclusory statements[44] and bare, baseless opinions are not probative and accordingly do not establish a prima facie case.[45]

 The Cashions assert that they stated claims for harassment, negligence, and intentional infliction of emotional distress with regard to the December 18 HOA letter. They requested injunctive relief preventing future similar actions by the HOA. They also requested a declaratory judgment that the HOA's actions in fining them for errant landscaping were beyond its authority, as well as a declaration that their actions in landscaping their backyard have not violated applicable restrictions, but as discussed above, the HOA expressly withdrew that portion of its motion to dismiss relating to the Cashions' declaratory-judgment claims.

The Cashions rely on Chris Cashion's affidavit, the declarations underlying the formation of the HOA, and the HOA's articles of incorporation and related amendments as the evidence to substantiate their claims. In his affidavit, Chris Cashion swore that the HOA refused in 2009 to return their construction deposit on grounds that they had violated the HOA's declaration by landscaping in the easement, forcing the Cashions to sue (successfully) to recover the deposit. Chris Cashion also swears that the HOA sought in 2013 to fine them for cutting a dead tree in the drainage easement. He further avers that board members commented about their landscaping, that they received the

---

**39.** To the extent that the Cashions allege in their petition of a pattern of harassment that predates the letter, these claims would fall outside the scope of the exercise of the right of petition. *See Serafine,* 466 S.W.3d at 360.

**40.** *See* Tex. Civ. Prac. & Rem. Code § 27.005(b) (requiring that legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, right to petition, *or* right of association).

**41.** *See id.*

**42.** *In re Lipsky,* 460 S.W.3d at 590 (citing *Simonds v. Stanolind Oil & Gas Co.,* 134 Tex. 332, 136 S.W.2d 207, 209 (1940)).

**43.** *Id.* (quoting *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex. 2004) (per

curiam)); *see, e.g., Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.,* 416 S.W.3d 71, 80 (Tex. App.–Houston [1st Dist.] 2013, pet. denied) (applying standard in TCPA case).

**44.** "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Conclusory, Black's Law Dictionary* (10th ed. 2014).

**45.** *In re Lipsky,* 460 S.W.3d at 592–93; *see Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.,* 441 S.W.3d 345, 355 (Tex. App.–Houston [1st Dist.] 2013, pet. denied).

HOA's presuit letter on Christmas Eve, causing distress and mental anguish, that they have not disturbed or removed vegetation from the easement other than the dead tree, and that they have not been given notice that they have violated any rule or regulation other than the alleged attempted fine in 2013.

The Cashions did not, in their response at trial or in their brief on appeal, set out the elements of their causes of action or apply the evidence to each element. While a criminal offense of harassment exists,[46] the Cashions have not established that a civil cause of action for harassment exists and that evidence of the HOA's conduct makes a prima facie case on all of the elements of that cause.

The Cashions further claim intentional infliction of emotional distress, which requires proof that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.[47] To be considered extreme and outrageous, the conduct must "go beyond all possible bounds of decency and [] be regarded as atrocious and utterly intolerable in a civilized community. . . . Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[48] Emotional distress includes embarrassment, fright, horror, grief, shame, humiliation, and worry, and severe emotional distress is so severe that no reasonable person could be expected to endure it.[49] Mere worry, anxiety, vexation, embarrassment, or anger are not enough and there must be a high degree of mental pain and distress,[50] but evidence of a physical manifestation is not required.[51] The *Bruce* court found the following combination of evidence legally sufficient to show severe emotional distress: the victims had crying spells, emotional outbursts, nausea, stomach disorders, headaches, difficulty in sleeping and eating, stress, anxiety, depression, and fear that caused them to be prescribed medication and be diagnosed as suffering from post-traumatic stress disorder.[52] The Cashions' assertions that they suffered "stress and emotional distress," that they were "annoyed and alarmed" by receiving the December 18 letter, and that the "emotional distress suffered by the Cashions was severe" were not clear and specific evidence of emotional distress that approached the severity described in *Bruce*.[53]

Evidence is similarly lacking concerning the Cashions' negligence claims. The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.[54] The Cashions assert that the HOA has

a duty to supervise all officers, agents and employees of [the HOA] and to see

---

46. *See* Tex. Penal Code § 42.07.

47. *See Hoffmann-La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004).

48. *Id.*

49. *GTE Sw., Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex. 1999).

50. *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex. 1995).

51. *Krishnan v. Sepulveda,* 916 S.W.2d 478, 487, n.3 (Tex. 1995).

52. *See* 998 S.W.2d at 618–19.

53. *See id.*

54. *IHS Cedars Treatment Ctr. of DeSoto, Tex. v. Mason,* 143 S.W.3d 794, 798 (Tex. 2004).

that their duties are being properly p[er]formed. [The HOA] breached that duty by allowing individual Board members to harass the Cashions over matters that are not permitted under the Declaration, [rules, and bylaws]. The negligence of [the HOA] proximately caused injury to the Cashions.

The Cashions do not specify in their petition or brief the damages caused by the alleged negligence, much less supply clear and specific evidence of those damages. Because the Cashions have failed to put forth a prima facie case on their claims arising from the December 18 HOA letter, we conclude that the trial court erred by denying the HOA's motion to dismiss the Cashions' claims for harassment, intentional infliction of emotional distress, and negligence. We render judgment dismissing those claims.

 The Cashions also seek injunctive relief to keep the HOA from harassing them, causing emotional distress, and acting outside its permissible enforcement authority. To obtain a permanent injunction an applicant must demonstrate (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) no adequate remedy at law. [55] The Cashions have provided evidence they claim shows the HOA acting outside the bounds of its authority threatening fines and continued improper limitation of the Cashions' activities. The Cashions did not, however, provide evidence of an irreparable injury or the absence of an adequate remedy at law, and thus did not establish a prima facie case for injunctive relief. We conclude that the trial court erred by denying the motion to dismiss the request for injunctive relief.[56]

## CONCLUSION

We reverse that part of the trial court's order denying the HOA's motion to dismiss the Cashions' claims for harassment, intentional infliction of emotional distress, negligence, and injunctive relief that are predicated factually on the December 18 letter, and we render judgment dismissing those same claims. The remainder of the order is affirmed, and the case is remanded for further proceedings consistent with our resolution of these issues on interlocutory appeal.

Concurring Opinion by Justice Pemberton, Joined by Justice Field

Bob Pemberton, Justice, concurring.

I join the Court's analysis and judgment, even though the outcome may do more to undermine than vindicate any "anti-SLAPP" goals of the Texas Citizens Participation Act (TCPA).[1] Viewed through our standard of review, as the Court recognizes, this case involves an HOA that has threatened spite-motivated and likely frivolous litigation against two of its homeowner members as part of a broader pattern of harassment—in short, conduct quite similar to the SLAPP-type lawsuit abuse whose elimination was the TCPA's professed goal.[2] Yet under the TCPA *as actually written*—and as the Judiciary is bound to apply it—it is the HOA that finds protection; indeed, the Act weaponizes the

---

**55.** *See Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex. App.–Dallas 1989, no writ).

**56.** The majority author does not take issue with the concerns raised in the concurrence, but finds further discussion of the breadth of the TCPA unnecessary to the disposition of this appeal.

**1.** *See Serafine v. Blunt,* 466 S.W.3d 352, 365–67 (Tex. App.–Austin 2015, no pet.) (Pemberton, J., concurring) (summarizing anecdotal legislative history of the TCPA).

**2.** *See id.*

HOA's conduct by making it a predicate for dismissing responsive claims of the homeowner victims. And while ironic, this outcome is not isolated in the growing body of TCPA cases—it is essentially a reprise of this Court's *Serafine* decision,[3] and no doubt more will follow. The primary root of such outcomes is the TCPA's broad definition of the "exercise of the right to petition," which protects lawsuits and even lawsuit threats without any explicit exclusion for frivolous or bad-faith litigation conduct.[4] But the Judiciary must continue to take these features of the Act as we find them, whatever one thinks of the outcomes in cases like *Serafine* and this one, because any refinement or limitation of that text must come from the Legislature instead.

Because the HOA met its initial burden through its reliance on the TCPA's "exercise of the right to petition" definition, the Court did not reach the HOA's alternative ground asserting that its pre-suit letter also sufficed as the "exercise of the right of association." The HOA's arguments in support of this ground are nonetheless noteworthy, at least for anyone who may be concerned about further divergence between the TCPA's professed "anti-SLAPP" purposes and the objective textual meaning courts must apply.

Intuitively, it would seem a bit far-fetched to argue, as the HOA does, that a letter from its lawyer threatening to sue the homeowners for tens of thousands of dollars, plus attorney's fees, plus thousands in additional fines, with an accompanying lien on the homeowners' property, and against the backdrop of the antagonistic history between the parties for which there was evidence here, could be considered an "exercise of the right of association" between the HOA and the homeowners—that is, assuming this "right of association" bears any resemblance to the concept long familiar to constitutional law.[5] But the "exercise of the right of association" *as defined and protected by the TCPA* is worded more broadly than this, at least when read in isolation. The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend com-

3. *See id.* at 376–77 ("[I]t is arguably the claims asserted by Serafine that more closely resemble the SLAPP paradigm, at least if one credits the Blunts' account of the events preceding her lawsuit. ... Yet it is Serafine's claims that are exalted and protected as the 'exercise of the right to petition' under the TCPA, in derogation of the Blunts' rights.").

4. *See id.* at 377–90 (analyzing breadth of TCPA's "exercise of the right to petition" definition). And even if the definition is read to tacitly incorporate the "sham litigation" exception from First Amendment law, this would be a high bar that would not exclude much frivolous or bad-faith litigation conduct, as illustrated in both this case and *Serafine*. *See* op. at 220–21; *Serafine*, 466 S.W.3d at 382–83 (Pemberton, J., concurring).

5. *See, e.g., Roberts v. United States Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) ("An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected ... unless a correlative freedom to *engage in group effort toward those ends* were not also guaranteed. ... According protection to *collective effort on behalf of shared goals* is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority.") (citations omitted) (emphases added); Randall P. Bezanson, Sheila A. Bentzen & C. Michael Judd, *Mapping the Forms of Expressive Association*, 40 Pepp. L. Rev. 23, 34 (2012) ("An expressive association under the First Amendment is a common enterprise consisting of expression *by and for* the group, not the individual members who can easily enough speak for themselves.").

mon interests."[6] The HOA correctly observes that its pre-suit letter was unquestionably a "communication," a term that is itself defined under the TCPA and would seemingly encompass any use of language.[7] It further reasons that an HOA's members "join together to collectively ... promote, pursue, or defend common interests," an accurate assertion if one assumes that such organizations serve to advance collective neighborhood welfare and not merely competing sides of the petty personal squabbles sometimes seen within them. Ergo, the HOA concludes, its letter was "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests," and thereby qualifies as the "exercise of the right of association" under the TCPA. Suddenly, the HOA's argument doesn't seem quite so far-fetched after all.

I've previously expressed the view that the meaning and scope of the TCPA's definitions of protected expression should presumably be informed by the Act's broader

stated purposes referring to constitutional rights[8] and the technical meaning that "right of association," "right to petition," and "right of free speech" have acquired in age-old constitutional jurisprudence.[9] But at least when construing the TCPA's "exercise of the right of free speech" definition, the Texas Supreme Court has continued to emphasize only the "four corners" of that provision's text without any explicit consideration of broader statutory or jurisprudential context.[10] To the extent this implies we must read the "exercise of the right of association" definition in isolation, I still think the definition plainly refers to a "communication" that is a component of the parties' "join[ing] together to collectively express, promote, pursue, or defend common interests," and must therefore advance interests the parties share, as opposed to merely being a "communication" between two persons who happen to share some "common interests" that may be unrelated or even adverse to the communication. Some decisions from our sister courts have read the definition similarly,[11] and

6. Tex. Civ. Prac. & Rem. Code § 27.001(2).

7. *See id.* § 27.001(1) (defining "communication" to "include[ ] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic").

8. *See id.* § 27.002 ("The purpose of [the TCPA] is to encourage and safeguard the *constitutional* rights of persons to petition, speak freely, associate freely, and *otherwise* participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.") (emphasis added).

9. *See Serafine*, 466 S.W.3d at 379–80 (Pemberton, J., concurring) (" 'We must, in short, look beyond what may initially seem to be the plain or obvious import of the ["exercise of the right to petition" definition] as it appears when read in isolation. We must instead determine its meaning against a broader contextual backdrop of the TCPA read as a whole

and in light of background law. When doing so, it becomes apparent that the TCPA's use of the term 'exercise of *the right to petition,*' like 'exercise of *the right of free speech*' and 'exercise of *the right of association,*' evokes 'particular terms from the Texas and United States Constitutions,' with 'particular meanings given those terms over centuries of jurisprudence.' " (quoting *Jardin v. Marklund*, 431 S.W.3d 765, 772 (Tex. App.–Houston [14th Dist.] 2014, no pet.))).

10. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898–902, No. 15-0407, 2017 WL 727274, at *2–5, 2017 Tex. LEXIS 215, at *7–15 (Tex. Feb. 24, 2017) (per curiam); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509–10 (Tex. 2015) (per curiam).

11. *See Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 213–16 (Tex. App.–Houston [1st Dist.] 2014, no pet.) (recognizing that communications between corporate CEO and general counsel concerning firing of assistant general counsel would not fall within TCPA's "exer-

applying that construction to this record, viewed through our standard of review, would be fatal to the HOA's argument. But that ship may have already sailed as far as this Court's own precedents are concerned.

A panel of this Court has held that communications between HOA members suffice as the "exercise of the right of association" under the TCPA by virtue of the members' "common interests" in the HOA's purposes.[12] Although the communications in question in that case would appear to advance the parties' shared interests, as they concerned alleged wrongdoing by the HOA's property-management company,[13] this was not explicitly a consideration in the Court's analysis.[14] This precedent, as I've previously suggested, arguably implies that the TCPA's "exercise of the right of association" definition would reach any communication between any two individuals who share some relationship or affiliation that can be said to have some element of "common interests," regardless whether furthered by the communication—a virtually endless list.[15] And if so, this precedent

would likewise support the expansive application of the "exercise of the right of association" that the HOA advocates here.

Such issues and uncertainties highlight the need for further guidance from the Texas Supreme Court regarding the meaning and scope of the "exercise of the right of association" under the TCPA,[16] which like other "difficult issues of statutory construction" under the Act, "broadly impact not only the sound operation of our civil justice system, but the sometimes-competing rights of Texans that the statute was expressly intended to balance and reconcile."[17] Then again, the Legislature, if it saw fit, "could provide, by amending the TCPA, the clearest and most direct expression of any legislative intent that has been eluding the Judicial Branch."[18]

cise of the right of association" merely by virtue of the "common interest" inherent in their coworker or attorney-client relationship; definition required that the pair have shared a "common interest" in the firing specifically); *Herrera v. Stahl*, 441 S.W.3d 739, 743, 745 (Tex. App.–San Antonio 2014, no pet.) (similarly reasoning that disparaging and insulting statements made between HOA members did not qualify as "exercise of the right of association," notwithstanding "common interest" HOA members shared, absent further proof that the statements expressed, promoted, or defended such an interest); *see also Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728 (Tex. App.–Dallas 2016, pet. denied) ("[A] lawyer's adversarial communication to a third party on behalf of his client does not meet the [TCPA] statutory definition of exercising the right of association.").

12. *See Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155, at *4, 2015 Tex. App. LEXIS 3337, at *11–12 (Tex. App.–Austin Apr. 7, 2015, no pet.) (mem. op.).

13. *Id.* at *3–4, 2015 Tex. App. LEXIS 3337 at *8–10.

14. *See id.* at *4, 2015 Tex. App. LEXIS 3337 at *11–12 ("[The] HOA members share common interests, such as ownership of the Sunchase 'Common Elements' and 'Common Expenses.' Thus, in the TCPA's terms, these communications [between HOA members] were between individuals *who joined the Sunchase HOA to* collectively express, promote, or defend their common interests as Sunchase homeowners.") (emphasis added).

15. *See Serafine*, 466 S.W.3d at 378–79 (Pemberton, J., concurring) (citing the example of communications between spouses).

16. The recent *Coleman* decision presented that issue, but the high court ultimately did not reach it. *See Coleman*, 512 S.W.3d at 901–02, 2017 WL 727274 at *4–5, 2017 Tex. LEXIS 215, at *14–15.

17. *See Serafine*, 466 S.W.3d at 394 (Pemberton, J., concurring).

