# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00683-CV

### Grand Parkline, LLC; H Mart Companies Incorporated; H Mart Austin LLC; and IYK Texas Corporation, Appellants

**v.**

### Mama Fu's Lakeline, LLC, Appellee

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-006056, THE HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the trial court's denial of a TCPA motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code §§ 27.003,[1] 51.014(a)(12). Appellee Mama Fu's Lakeline, LLC, sued several parties—including appellants Grand Parkline, LLC; H Mart Companies Incorporated; H Mart Austin LLC; and IYK Texas Corporation—complaining of actions related to a commercial-real-property lease. For the following reasons, we will reverse the portion of the trial court's order awarding Mama Fu's its attorney's fees and costs but otherwise affirm the trial court's order.

---

[1] The legislature amended the TCPA in 2019, but those changes do not apply here because this action was filed before the effective date of the amendments. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11–12, 2019 Tex. Sess. Law Serv. 684, 687 (specifying that TCPA amendments apply only to action filed on or after September 1, 2019). All citations to the TCPA in this opinion are to the version that applies to this dispute.

# BACKGROUND

As alleged in its live petition, in early 2005 Mama Fu's executed a ten-year lease of commercial space in an Austin shopping center at 11301 Lakeline Boulevard (the Shopping Center) to operate its "flagship" restaurant. Its landlord was 183 Parkline Shopping Center LP. The lease contained: an option to extend the lease for an additional five years and an exclusivity provision providing that "Landlord will not execute any lease for space within the Shopping Center with a tenant whose primary business is the sale of Asian-fusion style food." The lease defined Asian-fusion style food as "Asian, Asian Fusion, wok cooked, noodle based, or oriental food." After executing the lease, Mama Fu's "spent considerable funds building out its flagship restaurant" and opened for business in February 2006. As the "exclusive purveyor of Asian-fusion food in the Shopping Center, Mama Fu's business boomed," and it and 183 Parkline executed a lease amendment in 2009 expanding the lease's square footage. Thereafter, Mama Fu's "invested additional funds to expand its flagship store."

In late 2015, "because business was good," Mama Fu's began negotiating the extension option with its new landlord, 11301 Lakeline LP (Lakeline).[2] One of the main negotiating points for Mama Fu's was to remain the exclusive purveyor of Asian-fusion style food in the Shopping Center, and it "repeatedly asked [Lakeline] about competing prospective tenants." However, Lakeline allegedly "concealed its simultaneous negotiations to sell the Shopping Center to one of the United States' largest purveyors of Asian food [H Mart Companies, Inc.]." In late March 2016, Mama Fu's and Lakeline executed the lease extension, retaining the exclusivity provision.

---

[2] By this time, 183 Parkline had sold the Shopping Center to Lakeline, which is a defendant in this lawsuit but not a party to this appeal.

Mama Fu's contends that two weeks later, Lakeline executed an agreement to sell the Shopping Center to appellant IYK, which immediately assigned its rights and interests in the Shopping Center to appellant Grand Parkline. Mama Fu's shortly thereafter received a letter informing it of Grand Parkline's new address: "H Mart Companies, Inc.," in New Jersey.

In late 2017, Mama Fu's learned that the Asian supermarket chain H Mart would be opening a store in the Shopping Center and would be the chain's "first [store] to feature a food hall," to be called "Market Eatery," featuring "multiple food concepts under one roof." Each of the anticipated eateries would feature Asian food. Mama Fu's alleges that appellants IYK, Grand Parkline, and H Mart Austin LLC are "entities with the same owners and employees as H Mart Companies Incorporated, which is one of the United States' largest purveyors of Asian food."

Before the February 2018 grand opening of the H Mart store in the Shopping Center, Mama Fu's demanded that Grand Parkline cure its material breaches of the exclusivity provision within sixty days, as provided in the lease. However, Grand Parkline "unequivocally stated via letter that it would open [the H Mart store] in the Shopping Center and compete with Mama Fu's in violation of the [l]ease," allegedly repudiating the lease. After the H Mart store opened with ten Market Eatery tenants selling prepared Asian food, "Mama Fu's revenue steadily declined." Mama Fu's was eventually "forced to . . . vacate the premises" about a year later due to appellants' alleged breach of the exclusivity provision.

In its original petition, Mama Fu's named as defendants 183 Parkline and its management company (collectively, the prior landlords) and Grand Parkline, asserting causes of action for breach of contract against Grand Parkline and fraud against the prior landlords. Shortly thereafter, Mama Fu's filed a first amended petition adding the two H Mart entities as

3

defendants and asserting against them a claim for tortious interference with the lease. Mama Fu's also added a claim against all the defendants for conspiracy to commit fraud.

In its second amended, live petition, Mama Fu's joined IYK as a defendant and asserted new claims of alter ego[3] and constructive eviction against all four appellants. Mama Fu's added a claim against the two H Mart entities and IYK for breach of contract and a claim for conspiracy to commit fraud against IYK. Within sixty days of the filing of Mama Fu's second amended petition, appellants filed a TCPA motion to dismiss contending that the "newly added claims . . . squarely implicate [their] right of free speech, association, and petition." Mama Fu's responded, asserting that the motion was "untimely and barred as to all claims/theories of recovery against Grand Parkline and [the two] H Mart [entities] except for alter ego and constructive eviction, and should be denied on that basis." Mama Fu's also contended that the TCPA does not apply, that the commercial-speech exception applies, and that it had established a prima facie case for each of its claims.

The trial court denied appellants' motion and awarded attorney's fees and costs to Mama Fu's. This interlocutory appeal ensued.

**DISCUSSION**

*TCPA dismissal procedure*

The TCPA protects citizens from retaliatory lawsuits meant to intimidate or silence them on matters of public concern. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated

---

[3] Mama Fu's specifically alleged that the four appellants have "a unified existence" and "want to use the corporate form to escape liability to Mama Fu's [and that] . . . it would be unjust to treat the . . . entities as separate."

4

purpose of the Act is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002; *see ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). To that end, the TCPA provides a procedure to expedite the dismissal of a "legal action" brought to stifle the nonmovant's exercise of the rights protected by the statute. *See Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *see also* Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b).

Under the TCPA, a party may file a motion to dismiss a "legal action" if it is based on, relates to, or is in response to the party's exercise of the right of free speech, right to petition, or right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a). Courts review TCPA motions using a three-step analysis. *Youngkin*, 546 S.W.3d at 679. First, the party moving for dismissal must show by a preponderance of the evidence that the TCPA applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b). If the movant meets that burden, the nonmovant must establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id.* § 27.005(c). If the nonmovant satisfies that requirement, the burden shifts back to the movant to prove each essential element of any valid defenses by a preponderance of the evidence. *Id.* § 27.005(d). "In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). We review de novo whether each party met its respective burden. *See Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 218 (Tex. App.—Austin 2017, no pet.).

*Whether the TCPA applies*

The applicable version of the TCPA defines the "exercise" of each of the rights at issue—the right of free speech and of association[4]—as the making or submitting of a "communication," which is "a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code § 27.001(1). It defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests," and the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(2), (3). Thus, to meet their initial burden, appellants were required to prove by a preponderance of the evidence that the claims at issue (a) are based on or related to their communications that were either (b) made in connection with a matter of public concern or (c) with one or more individuals with whom appellants had joined to collectively promote or pursue common interests. *See id.* §§ 27.001, .005(b).

In determining whether appellants met their initial burden, we focus on Mama Fu's pleadings, which are the "best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." (citations omitted)). From Mama Fu's pleadings we determine whether the factual bases of the challenged claims constitute "expression" within the TCPA's definitions. *See Sloat v. Rathbun*, 513 S.W.3d 500, 503 (Tex. App.—Austin 2015, pet. dism'd). In determining the factual bases for the challenged claims, we consider the pleadings and other evidence in the light most favorable to the

---

[4] While appellants asserted in their TCPA motion that Mama Fu's live petition asserts claims implicating their right to petition, they have abandoned that argument on appeal.

6

nonmovant below, "favoring the conclusion that [the nonmovant's] claims are not predicated on protected expression." *Id.* at 504; *see* Tex. Civ. Prac. & Rem. Code § 27.006(a).

### *"Communications" at issue*

The parties dispute whether Mama Fu's has alleged that appellants made any "communications" at all (which would bring the TCPA into play) or merely took "actions" (which would preclude application of the TCPA). *See Bumjin Park v. Suk Baldwin Props., LLC*, No. 03-18-00025-CV, 2018 WL 4905717, at *3–4 (Tex. App.—Austin Oct. 10, 2018, no pet.) (mem. op.) (concluding that TCPA did not apply to claims that were based solely on conduct rather than communications). However, because the TCPA defines "communication" so broadly, *see* Tex. Civ. Prac. & Rem. Code § 27.001(1); *Adams v. Starside Custom Builders*, *LLC*, 547 S.W.3d 890, 894 (Tex. 2018), we assume without deciding that the following allegations in Mama Fu's petition fit the TCPA's definition of communications: the execution of the lease extension and agreement to sell the Shopping Center; the sending of a letter informing Mama Fu's to direct all inquiries about the lease to H Mart Companies, Inc., with a New Jersey mailing address and "hmart.com" email address; the requesting of a potential Market Eatery tenant (Agu Ramen) to complete a lease application upon Agu Ramen's inquiry about whether Mama Fu's had a right to exclusivity; the statement made to Mama Fu's that the H Mart store would open, in repudiation of the lease; and the conspiring to fraudulently conceal the pending sale of the Shopping Center to appellants (which presumably "necessarily involved" communications), *see Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *7–8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (determining that conspiracy claims against defendant "would necessarily have required

7

communications"). We therefore consider whether these alleged communications are the type covered by the TCPA.

### *Exercise of the right of free speech*

Appellants contend that the above-listed communications were "made in connection with a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code § 27.001. The applicable version of the Act defines a "matter of public concern" to include an issue related to "a good, product, or service in the marketplace." *Id.* § 27.001(7)(E). Appellants submit that the subject communications were about Asian food (i.e., a "good" or "product") and the lease of commercial space (i.e., a "service") in the marketplace and thus meet the statutory definition.

However, the Texas Supreme Court has recently determined that the former version of the statute's reference to goods, products, or services "in the marketplace" suggests that the communication about goods or services "must have some relevance to a wider audience of potential buyers or sellers in the marketplace, as opposed to communications of relevance only to the parties to a particular transaction." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 134 (Tex. 2019) (in trespass lawsuit brought by oil-and-gas lessor against lessee, concluding that TCPA did not apply to lessee's counterclaim alleging that lessor falsely communicated to third-party purchaser of lease production that lease had terminated and lessee was not entitled to payments, because those communications were not made in connection with "matter of public concern"); *see Crossroads Cattle Co. v. AGEX Trading, LLC*, 607 S.W.3d 98, 103 (Tex. App.—Austin 2020, no pet.) (following *Creative Oil & Gas* and holding that communications "necessarily involved" in cattle sale that related to alleged tortious interference with contract and conspiracy to commit breach of fiduciary duty did not have relevance to

8

wider audience beyond parties to transaction and, thus, that TCPA did not apply).  As the supreme court further elaborated: "Given the 'in the marketplace' modifier, the TCPA's reference to 'a good, product, or service' does not swallow up every contract dispute arising from a communication about the contract." *Creative Oil & Gas*, 591 S.W.3d at 134 (referring to former Tex. Civ. Prac. & Rem. Code § 27.001(7)(E)).

In light of this precedent, we cannot reasonably conclude that the challenged communications appellants made to each other, to the prior landlords, or to Mama Fu's had any relevance to a "public audience of potential buyers and sellers" beyond the parties to the particular private transactions at issue (i.e., the sale of the Shopping Center and negotiation, execution, and performance of the lease).  *See Creative Oil and Gas*, 591 S.W.3d at 134–35 ("The words 'good, product, or service in the marketplace,' however, do not paradoxically enlarge the concept of 'matters of public concern' to include matters of purely private concern."). Furthermore, as in *Creative Oil and Gas* and *Crossroads Cattle*, the record here is devoid of allegations or evidence that the dispute arising from appellants' alleged communication to third party Agu Ramen—asking it to fill out a rental application, which allegedly constituted a breach of the exclusivity provision—had "any relevance to the broader marketplace or otherwise could be reasonably characterized as involving public concerns." *Id.* at 136 ("[T]he alleged communications were made to two private [third] parties concerning modest production at a single well.  These communications, with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA."); *see Crossroads Cattle*, 607 S.W.3d at 103 (concluding that defendant's communications with third party that allegedly tortiously interfered with contract between plaintiff and third party were not covered by TCPA because they had no relevance to wider audience of potential buyers and sellers beyond

particular transaction at issue).  Rather, the alleged Agu Ramen communication and dispute arising therefrom "affect[] only the fortunes of the private parties involved and [are] simply not a 'matter of public concern' under any tenable understanding of those words."  *Creative Oil & Gas*, 591 S.W.3d at 137.  Accordingly, we conclude that Mama Fu's claims are not based on, related to, or in response to appellants' exercise of their rights of free speech as defined in the TCPA and that the Act does not apply on that basis.  *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(E).

### Exercise of the right of association

Appellants secondly contend that Mama Fu's claims are related to communications amongst themselves, with the former landlords, or with Agu Ramen—parties with whom appellants had "joined to collectively pursue or promote common interests." *See* Tex. Civ. Prac. & Rem. Code § 27.001.  The "common interests" appellants identified in their TCPA motion are the (1) "negotiating, executing, and upholding" of the lease, and the (2) operation of the H Mart store.  However, as this Court recently held in *Crossroads Cattle*, it is not sufficient for a TCPA movant to merely identify the so-called "common" interest of consummating a particular transaction in the absence of a specific common interest *beyond* that transaction.  *See* 607 S.W.3d at 105.

To determine whether any of the alleged communications were among individuals who had joined together to collectively pursue or promote the asserted common interests, we must individually consider the particular communications at issue[5]:

---

[5] We exclude from our consideration alleged communications that occurred among appellants and Mama Fu's, as appellants have not contended that they had joined together with Mama Fu's to collectively pursue or promote anything, much less "common interests."

10

1. The prior landlords' and appellants' execution of an agreement to sell the Shopping Center;

2. The prior landlords' and appellants' communications necessarily involved in allegedly conspiring to fraudulently conceal the pending sale of the Shopping Center; and

3. Appellants' request of Agu Ramen to complete a lease application for Market Eatery space.

As to the first and second categories of communications, we find no evidence or allegation in the record that the prior landlords and appellants had joined together to pursue or promote either asserted common interest—that is, the negotiation, execution, or enforcement of the lease or the operation of the H Mart store. Moreover, appellants have not demonstrated that they shared any specific common interest with the prior landlords other than mere consummation of the sales transaction. As we held in *Crossroads Cattle*, the mere conducting of business together as buyer and seller is not sufficient on its own to meet the statutory definition of exercising the right of association. *See* 607 S.W.3d at 105. We thus conclude that appellants have not met their burden to demonstrate that the TCPA applies based on the first and second categories of alleged communications listed above.

We reach the same conclusion as to the third alleged communication because appellants and Agu Ramen cannot reasonably be considered, on this record, to have been collectively pursuing or promoting any common interest apart from potentially establishing a landlord-tenant relationship, which is analogous to conducting business as mere buyer and seller, which we have previously held is insufficient, without more, to constitute "joining together" to "collectively pursue or promote a common interest" under the TCPA. *See Crossroads Cattle*, 607 S.W.3d at 105. Appellants have not contended, and Mama Fu's has not pleaded, that Agu Ramen had anything to do with the lease at issue or with operation of the H Mart store.

11

However, even if Agu Ramen had been involved in either of those ventures, we cannot on this record glean the respective individual interests of Agu Ramen and appellants in potentially consummating the landlord-tenant relationship or, therefore, whether the interests were the same, and we must view the pleadings in Mama Fu's favor. *See id.* at 102, 105. We thus conclude that appellants have not met their burden to demonstrate that the TCPA applies based on the third communication listed above.

Having concluded that none of Mama Fu's claims is based on, related to, or in response to appellants' alleged exercise of the right of association as defined in the TCPA, we hold that the Act does not apply on that basis. Also, because appellants did not meet their initial burden to demonstrate that the TCPA applies to the claims at issue, we need not address their other arguments about whether the commercial-speech exemption applies, whether the trial court erred in overruling their evidentiary objections, whether Mama Fu's met its prima facie burden as to each of its claims, or whether the TCPA motion was untimely as to certain claims. *See* Tex. R. App. P. 47.1, 47.4.

### *Award of attorney's fees*

In their second issue, appellants contend that the trial court abused its discretion in awarding Mama Fu's its attorney's fees and costs. *See* Tex. Civ. Prac. & Rem. Code § 27.009(b) ("If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party."); *Sullivan v. Texas Ethics Comm'n*, 551 S.W.3d 848, 857–58 (Tex. App.—Austin 2018, pet. denied) ("A party seeking attorney's fees and costs bears the burden to put forth evidence regarding its right to the award," and "we review a trial court's decision to award attorney's

fees for an abuse of discretion."). Although the trial court did not make express findings that appellants' motion was frivolous or solely intended to delay, we review the evidence upon which Mama Fu's relied to determine whether it is sufficient to support an implied finding under either prong. *See Sullivan*, 551 S.W.3d at 857–58 (reviewing legal sufficiency of evidence to support finding that motion was solely intended to delay and reviewing de novo whether motion was frivolous); *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 715 (Tex. App.—Austin 2000, pet. dism'd w.o.j.) (noting that when trial court does not make express finding, all fact findings necessary to support judgment are implied, and appellate court must uphold implied finding if sufficient evidence supports it).

Although we have determined that the TCPA does not apply to the claims at issue, we cannot conclude that appellants' motion was frivolous because, when they filed their motion, appellants did not have the benefit of *Creative Oil and Gas* and *Crossroads Cattle*, which, as discussed above, have effectively closed the door on the arguments appellants made in their TCPA motion. *See Sullivan*, 551 S.W.3d at 857–58 (concluding that trial court abused discretion in finding that TCPA motion was frivolous because appellant's arguments did not lack legal or factual basis); *see also Keane Frac, LP v. SP Silica Sales, LLC*, 608 S.W.3d 416, 433 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (reversing fees award based on trial court's frivolity finding because "there was at least a colorable basis in law and fact" for TCPA motion due to "unclear state of the law at the time" appellant filed motion because supreme court had not yet decided *Creative Oil & Gas*). Therefore, to the extent that the trial court awarded fees and costs on the basis of a finding that appellants' motion was frivolous, we conclude that the trial court abused its discretion. *See Sullivan*, 551 S.W.3d at 857.

13

As to whether Mama Fu's met its burden to put forth legally sufficient evidence to support a finding that the motion was solely intended to delay, we conclude that it did not. *See id.* (concluding that evidence was legally insufficient to support finding that delay was sole reason for filing TCPA motion). In requesting an award of fees in its response to appellants' TCPA motion, Mama Fu's addressed merely the frivolity prong and only summarily so: "As demonstrated above [in argument as to why TCPA did not apply], Defendants' motion is without merit." On appeal, Mama Fu's supports the trial court's implied delay finding by asserting that appellants "waited approximately nine months and conducted extensive discovery" before filing their motion. While nine months had elapsed between when Mama Fu's filed its original petition and when appellants filed their TCPA motion, the motion was filed within sixty days of the filing of Mama Fu's second amended (live) petition, making it an appropriate and timely vehicle to challenge the newly pleaded claims. *See* Tex. Civ. Prac. & Rem. Code § 27.003(b) (requiring TCPA motion to be filed within sixty days of service of legal action); *Jordan v. Hall*, 510 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (noting that amended petition asserting new claims based upon new factual allegations may reset TCPA deadline as to new claims). While Mama Fu's challenged the timeliness of the motion by contending that some of the claims it asserted in its second amended petition were not new, it concedes that some of its claims were new. Furthermore, we cannot reasonably conclude that appellants' conducting of discovery in the nine-month period before Mama Fu's amended its petition to add new claims— without more—demonstrates that their subsequent filing of a TCPA motion to dismiss the newly added claims was motivated solely by delay. Accordingly, we conclude that the trial court abused its discretion in impliedly finding that appellants' motion was frivolous or solely intended to delay and awarding Mama Fu's its attorney's fees and costs.

14

## CONCLUSION

We reverse the portion of the trial court's order awarding Mama Fu's its attorney's fees and costs and render judgment that Mama Fu's take nothing. We otherwise affirm the trial court's order.

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Kelly

Affirmed in Part; Reversed and Rendered in Part

Filed:   December 2, 2020