COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| NOBLE CAPITAL VENTURE FUND, LLC; TXPLCA, LLC; and NOBLE CAPITAL VENTURES, LLC, | § § § | No. 08-22-00208-CV |
| Appellants, | § | Appeal from the |
| v. | § | 98th Judicial District Court |
| REVELRY ON THE BOULEVARD, LLC; REVELRY KITCHEN AND BAR, LLC; CORNER BAR, LLC; LOCHRIE INVESTMENTS, LLC; and JONATHAN LOCHRIE, | § § § § | of Travis County, Texas (TC# D-1-GN-21-003474) |
| Appellees. | § | |

**MEMORANDUM OPINION**

This interlocutory appeal under the Texas Citizens Participation Act (TCPA) involves a business dispute predominately concerning whether money invested in two restaurants is properly characterized as a loan. After the private equity parties (Noble Capital Venture Fund, LLC; TXPLCA, LLC; and Noble Capital Ventures, LLC; collectively, "Noble") sued the restaurant parties (Revelry on the Boulevard, LLC; Revelry Kitchen and Bar, LLC; Corner Bar, LLC; Lochrie Investments, LLC; and Jonathan Lochrie; collectively, "the Lochrie Parties") based on the parties'

dealings, the Lochrie Parties asserted counterclaims. Noble moved to dismiss under the TCPA and Rule 91a of the Texas Rules of Civil Procedure, and the trial court denied the motion. We affirm.

## BACKGROUND[1]

Jonathan Lochrie, the sole owner of Lochrie Investments, LLC, is an entrepreneur and restauranteur in Austin, Texas. After the success of his first restaurant, Corner Bar, he partnered with Noble to establish two new restaurants: Revelry Kitchen and Bar (RKB) and Revelry on the Boulevard (ROB). Noble organized the LLCs for both RKB and ROB.

The Noble entities each contributed various amounts of startup cash to each restaurant.[2] Lochrie contends he and Noble's chief operating officer agreed Noble would be the primary capital investor, providing startup money and business services, while he would create the concepts and provide management services for the restaurants. However, other than the corporate formation documents, no terms of this partnership were reduced to writing. Indeed, Lochrie refers to the arrangement as a "handshake" deal and alleges Noble's chief executive officer (and Lochrie's childhood friend) called it a "buddy deal."

Based on Noble's chief operating officer's suggestions, Lochrie says he took monthly draws from the restaurants as compensation for his full-time management duties, as well as transferred money from one restaurant to the other as necessary for business operations. By late 2017, with both restaurants still struggling to find success, Lochrie agreed to a $90,000 loan

---

[1] Because this appeal requires a determination of whether the TCPA applies to the Lochrie Parties' counterclaims, this section is largely pulled from facts alleged in the Lochrie Parties' first amended counterclaim, i.e., the live pleading when Noble filed its motion to dismiss. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (observing that "it would be impossible to determine the basis of a legal action, and thus the applicability of the [TCPA], *without* considering the plaintiff's petition" because the petition "is the best and all-sufficient evidence of the nature of the action" (cleaned up).).

[2] The characterization of Noble's cash contributions is at the heart of this litigation, and in using certain terms over others (e.g., "contributions," rather than "loans"), we take no stance on the merits of the parties' arguments.

proposed by Noble to help ROB meet its operating costs. As part of that deal, Lochrie also gave Noble Capital Venture Fund a security interest in ROB's assets. Noble also proposed a $60,000 loan for RKB, which Lochrie says he declined.

In October 2020, with the restaurants struggling during the COVID-19 pandemic, Noble asked Lochrie for a "partnership reset" and (unbeknownst to Lochrie) filed two UCC-1 financing statements with the Texas Secretary of State claiming a security interest in RKB's assets. Noble's proposal outlined new terms of ownership and management for both restaurants and characterized its past cash contributions as debt. It also included copies of several promissory notes reflecting repayment at 16% interest.[3]

Lochrie maintains all but one of those notes—the 2017 $90,000 ROB loan—contained unauthorized digital images of his signatures. Noble later wrote to Lochrie and the restaurants regarding the disputed notes, stating that it "conduct[ed] a more thorough review" following Lochrie's protests about their validity and determined it disseminated all but two[4] as "the result of a bona fide accident/misunderstanding." Noble clarified it was "rescinding and cancelling" the other disputed notes.

Noble sued Lochrie, his LLC, and his three restaurants to collect over $1.8M in principal and interest of what it characterizes as loans, asserting breach of contract, fraud, and declaratory judgment claims. Noble also sought to appoint a receiver over RKB, but the trial court denied the motion. The Lochrie Parties denied Noble's allegations, raised affirmative defenses, and asserted counterclaims against Noble, seeking declaratory relief on the validity of the disputed promissory

---

[3] Soon after sending its proposed term sheet, Noble also demanded to examine all books and records of RKB, ROB, and Corner Bar.

[4] The two remaining notes include the 2017 $90,000 ROB loan—which Lochrie agrees is valid—and a 2017 RKB loan—which Lochrie maintains he never signed.

notes and bringing claims for breach of fiduciary duty, fraud, fraudulent lien filing for the UCC-1 financing statements against RKB, tortious interference, and alternatively (if the trial court decided the disputed payments were loans), lender liability fraud and usury.

After the Lochrie Parties filed their first amended counterclaim (which dropped the tortious interference claims), Noble moved to dismiss under Rule 91a (for the fraud and usury claims) and the TCPA (for all other claims). It also challenged the standing of the Lochrie Parties to bring various claims. The Lochrie Parties responded, contending the TCPA does not apply, and filed a second amended counterclaim to address Noble's standing issue. The trial court denied Noble's motion to dismiss following a hearing. This interlocutory appeal followed.

## APPLICABLE LAW AND STANDARD OF REVIEW

The TCPA "protects speech on matters of public concern by authorizing courts to conduct an early and expedited review of the legal merit of claims that seek to stifle speech through the imposition of civil liability and damages." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). It "was designed to protect both a defendant's rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries the defendant caused." *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.002). If a legal action is "based on or is in response to" the exercise of one of the statutory enumerated rights, the defendant may seek dismissal under the TCPA. *Yu v. Koo*, 633 S.W.3d 712, 720 (Tex. App.—El Paso, no pet.).

The TCPA provides a three-step process for dismissing a legal action to which it applies. *Montelongo*, 622 S.W.3d at 295 (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018)). First, the party seeking dismissal must show the TCPA applies—i.e., "the movant must demonstrate that the non-movant's legal action 'is based on or is in response to a party's

4

exercise of the right of free speech, right to petition, or right of association.'" *O'Rourke v. Warren*, No. 03-22-00416-CV, 2023 WL 3914278, at \*6 (Tex. App.—Austin June 9, 2023, no pet. h.) (quoting TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b)). "If the movant does not meet this initial burden, the motion to dismiss fails." *Venero Lugo v. Cordova Sanchez*, No. 03-21-00058-CV, 2021 WL 5312323, at \*3 (Tex. App.—Austin Nov. 12, 2021, pet. denied) (mem. op.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). If the movant shows the TCPA applies, the nonmovant must then establish by "clear and specific evidence" a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). If the nonmovant does so, the burden then shifts back to the movant to establish "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Wendt v. Weinman & Associates, P.C.*, 595 S.W.3d 926, 928 (Tex. App.—Austin 2020, no pet.). In determining whether dismissal under the TCPA is proper, courts consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). We consider the pleadings in the light most favorable to the nonmovant and do not "blindly accept[] a movant's attempts to characterize a nonmovant's claims as implicating protected expression"; instead, we "favor[] the conclusion that the claims are *not* predicated on protected expression." *Venero Lugo*, 2021 WL 5312323, at \*4 (emphasis added) (citing *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd)). Whether the TCPA applies to a claim is an issue of statutory interpretation we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

ANALYSIS

On appeal, Noble challenges the trial court's denial of its TCPA and Rule 91a motion to dismiss. Noble first contends it satisfied the burden of showing the TCPA applies and the Lochrie Parties failed to establish by clear and specific evidence a prima facie case for each essential element of every claim. Alternatively, Noble raises a limitations defense and challenges some of the Lochrie Parties' standing to bring certain claims. The Lochrie Parties respond that the TCPA does not apply. Alternatively, they contend they have met their burden of making a prima facie case for each counterclaim and no counterclaim is barred by limitations. They also urge that we cannot reach Noble's standing arguments given the limited nature of this interlocutory appeal. Finally, the Lochrie Parties argue that we lack appellate jurisdiction to review the denial of a Rule 91a motion to dismiss.

## A. Does the TCPA apply?

To establish that the TCPA applies, Noble must show that the counterclaim "is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Noble contends all three protected rights are implicated.

### (1) Is the counterclaim based on or in response to Noble's exercise of the right to petition?

Noble maintains the TCPA applies because the counterclaim is based on or in response to its right to petition. Specifically, Noble contends the counterclaim is based on and was filed in response to its pre-suit communications, its suit against the Lochrie Parties, and other claims for

relief made during the parties' litigation, like its motion for appointment of a receiver.[5] Noble points out the counterclaim "literally quotes" its petition and highlights examples where the counterclaim references its petition and attached exhibits.

The Lochrie Parties respond that Noble has not met its burden to identify in the record which pre-suit communications it believes the counterclaim is based on, and in any event, the only pre-suit communication upon which their counterclaim is based is not an exercise of the right to petition under the TCPA. They also contend the counterclaim is not factually predicated on Noble's suit or motion to appoint a receiver.

The TCPA defines the "[e]xercise of the right to petition" to mean, in relevant part, "a communication in or pertaining to [] a judicial proceeding[.]" *Id.* § 27.001(4)(A)(i). Noble has not carried its burden to show that any of the parties' pre-suit communications are communications pertaining to a judicial proceeding sufficient to invoke the TCPA. First, though Noble says its motion to dismiss "chronicles in detail" the pre-suit communications it contends the counterclaim is based on, it fails to identify the specific communications. Noble's motion to dismiss instead broadly summarizes the counterclaim's allegations, including Noble's proposed terms for a partnership reset, the allegedly forged promissory notes, Noble's demand to examine the restaurants' books and records, and Noble's notice it planned to seize ROB's assets under the 2017 loan. None of these communications were made in or pertaining to a judicial proceeding. *See id.*

Still, citing to a case decided under the prior version of the TCPA, Noble argues pre-suit demand letters and communications are sufficient to invoke the TCPA's protections. *See Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 220–21 (Tex. App.—

---

[5] Noble also states the counterclaim is based on or in response to its response in the parties' related arbitration; however, it does not brief that issue, so we do not consider it here. *See* TEX. R. APP. P. 38.1(i).

7

Austin 2017, no pet.). But in 2019, the legislature amended the TCPA and "narrowed" its scope by, among other things, removing the TCPA's application from a legal action that merely "relates to" an exercise of a protected right.[6] *Wells v. Crowell*, No. 05-20-01042-CV, 2021 WL 5998002, at *4 (Tex. App.—Dallas Dec. 20, 2021, no pet.) (mem. op.) (collecting cases describing the legislature's 2019 amendment of the TCPA as narrowing its application). Thus, Noble's reliance on the "relates to" language in the prior version of the TCPA or cases interpreting that language does not satisfy its burden to show its applicability here. The parties' pre-suit communications do not fall within the TCPA's definition of a communication pertaining to a judicial proceeding.

Noble also has not carried its burden to show the counterclaim is based on or in response to its petition or motion for receivership. Noble urges us to rely on the procedural timeline and determine the Lochrie Parties' counterclaim must be based on or filed in response to its petition because the counterclaim was filed second. But under Noble's position, "all claims asserted by a defendant, either as a counterclaimant or as a third-party plaintiff, would be claims 'in response to . . . a communication in or pertaining to . . . a judicial proceeding,' because by definition, such claims can be brought only by a party who has already been sued." *Republic Tavern and Music Hall, LLC v. Laurenzo's Midtown Mgmt., LLC*, 618 S.W.3d 118, 124 n.15 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting previous version of TCPA). An individual's right to petition is not implicated solely by the fact that a defendant brought claims after he was sued. *See id.* at 125; *Marrujo v. Wisenbaker Builder Servs., Inc.*, No. 01-19-00056-CV, 2020 WL 7062318, at *10 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet.) (mem. op.). As the Lochrie Parties point out, this reasoning is particularly untenable when, like here, the counterclaims are compulsory; if

---

[6] That version of the TCPA provided for dismissal of a legal action that is "based on, *relates to*, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Cashion*, 517 S.W.3d at 216 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (2011) (emphasis added)).

courts agreed with Noble's position, the Lochrie Parties would have to either assert a compulsory counterclaim and face a TCPA motion to dismiss or give up the counterclaim altogether. That result is inconsistent with the TCPA's purpose. TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ("The purpose of this chapter is to encourage and safeguard the constitutional rights of persons . . . and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."); *see Republic Tavern*, 618 S.W.3d at 125 ("We decline to hold that the TCPA's applicability turns solely on which party won the race to the courthouse."); *cf. Youngblood v. Zaccaria*, 608 S.W.3d 134, 141 (Tex. App.—San Antonio 2020, pet. denied) (concluding TCPA did not apply to declaratory action filed following mediation because doing otherwise "would expand the TCPA's application to all lawsuits where the parties engage in a pre-suit mediation").

In any event, the Lochrie Parties' claims arise from facts that occurred before Noble filed its lawsuit. *See Marrujo*, 2020 WL 7062318, at *9 n.8 (citing cases in which the facts predicating a second-filed lawsuit pre-dated the first-filed suit and thus did not implicate the movant's right to petition under the TCPA). The counterclaim is based on the characterization of Noble's financial contributions to the restaurants, Noble's allegedly forged promissory notes, and its subsequent demand for payment under those notes. To trigger the protection of the TCPA, the legal action must be "'factually predicated on' allegations of conduct that fall within one of the TCPA's protected rights." *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 276 (Tex. App.—Tyler 2021, pet. denied) (citing, among other cases, *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied)). Because the counterclaim is factually predicated on events that occurred before Noble filed its suit—and not on communications within or pertaining to Noble's suit itself—the counterclaim is not based on or in response to Noble's suit or other claims for relief made during the litigation.

9

Viewing the counterclaim in the light most favorable to the Lochrie Parties, as we must, we conclude Noble has not met its burden under § 27.005(b) to show the counterclaim is based on or is in response to its right to petition.

**(2)  Is the counterclaim based on or in response to Noble's exercise of the right of free speech or association?**

Noble also argues the TCPA applies because the counterclaim is based on or in response to its exercise of the right of free speech or association. Because both of those protected rights require that the speech or association relate to "a matter of public concern," we consider that question first. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2) ("'Exercise of the right of association' means to join together to collectively express, promote, pursue, or defend common interests relating to . . . a matter of public concern."); *Id.* § 27.001(3) ("'Exercise of the right of free speech' means a communication made in connection with a matter of public concern."). If Noble has not demonstrated its speech or association involves a matter of public concern, neither the right of free speech nor the right of association is implicated under the TCPA.

Noble argues matters of public concern are implicated in several ways. First, Noble contends the counterclaim alleges it committed crimes (based on the forged notes) and statutory violations (based on the usury and fraudulent lien claims), which it says fits within the TCPA's matter of public concern definition. Second, Noble maintains that because the counterclaim involves "the business of restaurants and bars," which is "highly regulated to ensure the public safety[,]" it involves matters of public concern. Noble also argues the restaurants and Lochrie himself are "of considerable public interest to the community," referencing press coverage on the restaurants and Lochrie's characterizations of himself as a restauranteur in Austin. Finally, Noble contends the counterclaim involves matters of public concern because the restaurants suffered closures and layoffs during the COVID-19 pandemic and received pandemic-related federal

10

business loans, which Noble characterizes as "procured on false pretenses, under fraudulent circumstances and/or subject to double pledges."

The Lochrie Parties respond that its counterclaims are factually predicated on the parties' private communications about private business ventures, and thus none of Noble's related communications or associations involve a matter of public concern. The Lochrie Parties point out that Noble's argument relies largely on the prior version of the TCPA, which allowed a broader application than the current version. Lastly, the Lochrie Parties note that Noble incorrectly relies on communications, actions, and allegations of misconduct by the Lochrie Parties—i.e., the nonmovants—when its burden is to show its own speech or association relates to a matter of public concern.

The 2019 amendments to the TCPA modified the definition of "matter of public concern" to mean a statement or activity regarding "(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public."[7] *Id.* § 27.001(7). "To be a matter of public concern, a claim must have public relevance beyond the interests of the parties." *Szymonek v. Guzman*, 641 S.W.3d 553, 565 (Tex. App.—Austin 2022, pet. denied) (quoting *Morris v. Daniel*, 615 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2020, no pet.)). So, while private communications between parties may implicate the TCPA's protections, the communications must still be made in connection with a matter of public concern. *Project Rose*, 633 S.W.3d at 276 (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)).

---

[7] Noble does not distinguish which portion of the definition it contends applies to this case.

11

Noble's first argument—regarding the counterclaim's reference to criminal acts and statutory violations—fails because Noble relies on the Lochrie Parties' allegations rather than its own communications, as the TCPA requires. In other words, Noble points to the Lochrie Parties' allegations that Noble forged promissory notes, charged usurious interest rates, and filed fraudulent liens—not its own speech about the same. "[A] defendant must show that a plaintiff's lawsuit implicates the defendant's communications" because "the TCPA does not apply when movants fail to demonstrate their own exercise of a TCPA-protected right." *Venero Lugo*, 2021 WL 5312323, at *5 (collecting cases). Even assuming allegations of criminal acts and statutory violations meet the definition of matters of public concern, those communications must have been made by Noble to be protected under the TCPA. *Id.*; *Sullivan v. Texas Democratic Party*, No. 03-19-00936-CV, 2021 WL 1256891, at *5 (Tex. App.—Austin Apr. 6, 2021, pet. denied) (mem. op.) (defendant failed to establish plaintiff's claims were "based on, related to, or in response to any of his communications" under prior version of the TCPA because plaintiff's claims arose out of communications by a third party). By relying on the Lochrie Parties' allegations, Noble failed to satisfy its burden of showing that it exercised the right of free speech or association. *Venero Lugo*, 2021 WL 5312323, at *6.

Noble also has not shown the counterclaim implicates matters of public concern simply because it involves the business of restaurants and bars, which in turn involve health and public safety regulation. Again, Noble cites caselaw predating the 2019 TCPA amendment. *See Cavin v. Abbott*, 545 S.W.3d 47, 61 (Tex. App.—Austin 2017, no pet.). Indeed, the prior version of the TCPA included within the definition of "matter of public concern" issues related to "health or safety" and "environmental, economic, or community well-being." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7) (2011). However, the applicable version of the TCPA removed the "health

and safety" language from its definition of "matter of public concern." And even under the prior version of the TCPA, the "mere fact" that a party operates in an industry involving "health or safety" was insufficient to demonstrate its communications involved a matter of public concern. *Clinical Pathology Labs., Inc. v. Polo*, 632 S.W.3d 35, 48 (Tex. App.—El Paso 2020, pet. denied).

Despite Noble's arguments otherwise, the record does not support its contention that the restaurants are "subject[s] of concern to the public" or Lochrie is a "public figure . . . who has drawn substantial public attention due to [his] official acts, fame, notoriety, or celebrity[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7). While the record does include six local press articles regarding the restaurants' opening, that coverage alone (or the fact that the restaurants are open to the public) does not establish the restaurants are "subject[s] of concern to the public." *Cf. Project Rose*, 633 S.W.3d at 279 (concluding counterclaim fell within TCPA's exercise of free speech prong because it was based on communications made in connection with a matter of public concern when the case involved "prominent celebrities," who "utilized the media and press coverage to foster public interest in the project" involving "a world-class sports medicine facility"); *Montano v. Cronan*, No. 09-20-00232-CV, 2021 WL 2963801, at *5 (Tex. App.— Beaumont July 15, 2021, no pet.) (mem. op.) (finding TCPA applied to suit because it was factually predicated on defendants' communications, which involved matters of public concern given the involvement of national rowing club and related safety and welfare concerns). The same goes for Lochrie himself, whose mention as the restaurants' owner in three of the articles also does not establish that he is a 'subject of concern to the public' or a 'public figure.'"

Finally, Noble does not provide support for its argument that because the restaurants were impacted by the COVID-19 pandemic and received related federal loans, the counterclaim necessarily involves a matter of public concern. Indeed, Noble points to no communication or joint

13

expression it made involving the pandemic's impact on the restaurant, let alone one on which the counterclaim is based. Noble's communications on which the counterclaim is factually predicated—e.g., correspondence regarding the nature of Noble's financial contributions to the restaurants, the allegedly forged promissory notes, and Noble's demand for payment—relate to the parties' business relationship. Despite Noble's argument otherwise, "[t]hese are 'purely private matters' that cannot 'reasonably be characterized as involving public concerns.'" *Marrujo*, 2020 WL 7062318, at *6 (citing *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135–36 (Tex. 2019)). Because "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words," Noble has not met its burden to show its speech or associations were made in connection with matters of public concern. *Creative Oil*, 591 S.W.3d at 137. Thus, neither Noble's right of free speech nor its right of association is implicated under the TCPA.

Because we have concluded Noble failed to show that the TCPA applies, we do not reach the question of whether the Lochrie Parties met their burden to establish a prima facie case for each essential element of their claims or, if so, whether Noble's affirmative defenses have merit.[8] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)–(d).

___

[8] Embedded within its response to the Lochrie Parties' prima facie case, Noble contends certain Lochrie entities do not have standing to bring certain counterclaims. (For example, Noble contends only ROB has standing to bring a declaratory judgment claim as to the 2017 $90,000 promissory note.) However, Noble looks to the Lochrie Parties' first amended counterclaim in challenging standing. The Lochrie Parties filed a second amended counterclaim in response to those jurisdictional complaints and clarified which Lochrie entity was suing which Noble entity. While the first amended counterclaim is the operative pleading for the TCPA motion to dismiss, the Lochrie entities were entitled to amend their pleadings to address jurisdictional defects. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) ("[A] litigant has a right to amend to attempt to cure pleading defects if jurisdictional facts are not alleged."); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 468–69 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (recognizing that TCPA motions to dismiss survive nonsuit of claims in subsequent pleadings if the motion to dismiss "affords more relief than a nonsuit provides"). To the extent Noble's argument implicates the underlying merits of the litigation (including whether Lochrie Investments LLC was removed as manager of RKB), we lack jurisdiction to address those issues because we have interlocutory appellate jurisdiction solely to review whether the trial court properly denied Noble's motion to dismiss filed under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12); *see CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) ("We strictly apply statutes

**B. Does this Court have jurisdiction to review the trial court's order denying Noble's Rule 91a motion?**

Noble also argues the trial court erred in denying their Rule 91a motion to dismiss for the Lochrie Parties' fraud claims, which are exempt from the TCPA. *Id.* § 27.010(a)(12). However, Noble cannot challenge the trial court's denial of their Rule 91a motion because that order is not subject to interlocutory appeal.[9] *Koenig v. Blaylock*, 497 S.W.3d 595, 598 n.4 (Tex. App.—Austin 2016, pet. denied) (citing *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001)). Because we have jurisdiction to consider interlocutory appeals only as authorized by statute, and because no statute authorizes an interlocutory appeal of the denial of a Rule 91a motion to dismiss, we do not have jurisdiction to review the trial court's order denying Noble's Rule 91a motion to dismiss. *See id.*

## CONCLUSION

For the above reasons, we overrule Noble's issues on appeal. We affirm the trial court's denial of Noble's TCPA motion to dismiss because Noble did not satisfy the burden to show the TCPA applies to the Lochrie Parties' counterclaims. We lack jurisdiction to review the denial of the Rule 91a motion to dismiss.

YVONNE T. RODRIGUEZ, Chief Justice

August 17, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

---

granting interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable."); *Gilani v. Rigney*, No. 02-21-00314-CV, 2022 WL 714700, at *5 (Tex. App.—Fort Worth Mar. 10, 2022, pet. denied) (mem. op.) (collecting cases declining to address other dismissal arguments not based on the TCPA).

[9] Noble did not seek permission to pursue an interlocutory appeal under § 51.014(d) of the Texas Civil Practice and Remedies Code.

15