# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-22-00037-CV

**Nicole Welch and Restore Hyper Wellness and Cryotherapy, an Entity of Austin Cryo Ventures, LLC, Appellants**

**v.**

**Kymberly See, Appellee**

---

### FROM THE 450TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-003629, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

We withdraw our previous opinion and judgment issued on June 30, 2023, and substitute the following opinion and judgment in their place. We deny the motion for rehearing filed by appellee Kymberly See.

Appellants Nicole Welch and Restore Hyper Wellness and Cryotherapy, an Entity of Austin Cryo Ventures, LLC challenge the trial court's order denying their motion to dismiss brought under the Texas Citizens Participation Act (TCPA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. In the underlying suit, See, a registered nurse and former employee of Restore, sued Welch and Restore for libel and tortious interference arising out of allegedly defamatory statements. The challenged statements were made to the Texas Board of Nursing in response to subpoenas served on Restore during a pending investigation of See's care of a patient.

Because we conclude that See did not establish a prima facie case for each essential element of her claims as required by the TCPA, we reverse the trial court's order and remand the case to the trial court for dismissal and determination of attorneys' fees consistent with the TCPA. *See id.* § 27.009(a).

## BACKGROUND[1]

Restore is a health-care provider that offers health and wellness services, including intravenous infusion. The patient-care incident that led to the Board's investigation occurred on January 30, 2020, while See was employed by Restore. The basic facts of the incident and the patient's condition are undisputed. On that date, See administered an intravenous infusion to a patient and used a pressure cuff to reduce the duration of the infusion process.[2] After the injection, during the infusion process, the patient momentarily lost consciousness. A 9-1-1 call was made, and Emergency Medical Services came and assessed the patient. See attested that when EMS assessed the patient, "he was conscious, denied any confusion, weakness, headache, nausea, vomiting, shortness of breath, or difficulty breathing." See further attested that the patient refused transportation to the hospital and was picked up by his wife.

**The Board's Investigation and the Parties' Responses**

On February 22, 2020, See received a certified letter from the Board informing her that a complaint had been filed and requesting an explanation of events. Welch, Restore's

---

[1] We have distilled these facts from the allegations in See's petition and the affidavits and documents submitted by the parties with their TCPA-motion briefing in the trial court.

[2] See attested that the patient requested the use of the pressure cuff to reduce the time of the process.

2

Corporate Safety and Compliance Officer, attested that Restore received subpoenas from the Board in March 2020 and June 2020 requesting information, documents, and materials related to See and the January 30, 2020 incident. Welch further attested that she was responsible for coordinating Restore's response to the subpoenas by identifying responsive documents, organizing them for production, and timely sending them to the Board. Welch attested that the documents produced in response to the subpoenas concerned (1) See's employment with Restore; (2) Restore's investigation of See's care of the patient on January 30, 2020; (3) the findings of Restore's investigation; (4) the action taken based on those findings; and (5) Restore's relevant policies and protocols.

See attested that on June 24, 2020, her attorney for her disciplinary hearing before the Board received the case documents from the Board and upon subsequent analysis discovered that Restore and Welch had made defamatory statements about See. According to See's petition, later in June 2020, her attorney sent "a correction of evidence letter" to the Board. See entered into mediation with the Board in April 2021, and in May 2021, See's attorney issued a subpoena requesting additional documents from Restore and Welch. See alleged that on June 10, 2021, she received subpoenaed documents from Restore and Welch through the Board and discovered more defamatory statements that they made against her.

**See's Lawsuit**

See sued Restore and Welch on July 30, 2021, asserting claims for libel per quod, libel per se, tortious interference with existing contracts, and tortious interference with prospective contracts or business relations and seeking damages and attorneys' fees. In particular, she alleged in her petition (and later attested in her affidavit) that Restore and Welch made the following false

3

statements of fact in the incident report sent to the Board that are relevant to her care of the patient (each statement is followed by See's allegations about its falsity):

- "Ms. See, acting outside of Restore protocol, used a pressure bag to administer the IV while the Client was concurrently receiving compression therapy via Normatec Compression boo[t]s."

    o See contends that a Restore memo to staff confirms that the use of pressure bags was in a previous version of its nursing manual and their use was not outside of Restore protocol.

- Restore stated that Restore's medical director, Dr. Hemmert, had the viewpoint that "the non-compliant use of the pressure cuff likely created the adverse effects experienced by the Client."

    o See contends that Dr. Hemmert was unaware that pressure cuffs were listed as approved supplies in the then-current version of Restore's nursing manual until See informed him.

- Restore stated that EMS transported the patient to the hospital.

    o See stated that she has actual knowledge that the patient was picked up by his wife.[3] Restore has conceded that this was a misstatement of fact.

See also alleged and attested that Restore and Welch made other false statements of fact in the incident report about how they handled the incident with her. See contended that Restore made two other false statements: (1) that she was informed that her conduct was outside of Restore's protocol, and if repeated, would be the basis for formal disciplinary action and termination, and (2) that she had been placed "on leave from working until further notice and investigation is complete." See alleged and attested that she remained actively employed by Restore until March 21, 2020, when she took leave to help in New York with the COVID-19 crisis. She attested:

---

[3] See's Encounter Notes, which were included with Restore's incident report that was submitted to the Board, explained that the patient refused transport to the hospital and instead his wife, who is a doctor, came to get him.

4

> I was not advised or informed by [Restore and Welch] that my conduct was outside Restore protocol as of the date this written statement was sent to the Texas Board of Nursing. I was never advised or informed by [Restore and Welch] that I was subject to or in danger of formal disciplinary action and/or termination.

See further alleged and attested that on June 15, 2020, Restore notified her that she was being removed from the payroll for financial reasons and that she was not terminated for cause, nor was the disciplinary hearing ever cited as a reason for her removal from the payroll.

See alleged and attested that in the second set of subpoenaed documents that she received in June 2021, Restore and Welch made additional false statements of fact about her employment status with Restore. She contended that contrary to their statement that the franchise owner "verbally spoke with Ms. See regarding the break in protocol," the owner did not tell her that she broke protocol. She also alleged and attested that Restore and Welch falsely stated, "Ms. See was not immediately terminated when spoken to, as the internal investigation was pending although Ms. See was removed from the schedule until the investigation was complete." See again responded that she was never terminated nor was there a pending internal investigation at the time. She also asserted and attested that she was not removed from the schedule but instead "was asked to pick up extra shifts and private events for clients during that time." See alleged that when Restore and Welch responded to the Board's subpoena, they had included an altered version of the message that Restore had originally posted on February 7, 2020, to its staff regarding the use of pressure bags. See attested that she has "actual knowledge that [Restore and Welch] altered the message." She also attested (but did not allege in her petition) that she has "actual knowledge that [Restore and Welch] have suppressed the release of former editions of its nurse's manuals in an attempt to cover up that pressure bags were in their list of approved supplies."

5

**Restore and Welch's Answer and TCPA Motion**

In Restore and Welch's amended answer (their live pleading), they asserted a general denial and the affirmative defenses of truth, the common-law qualified privilege, and limitations. Restore and Welch filed a motion to dismiss, asserting that See's claims should be dismissed because her legal action was based on and in response to their exercise of the rights of free speech and petition protected by the TCPA. See responded, contending that the TCPA does not apply to her claims, but asserting that even if it does apply, she was submitting sufficient evidence with her response to establish a prima facie case for each of her claims. Restore and Welch then filed a reply objecting to the evidence submitted by See with her response and asserting their defenses of limitations and immunity. The trial court conducted a hearing on the motion, and later, on January 3, 2022, it signed an order denying the motion. On January 14, 2022, the trial court signed a modified order that included its rulings on Restore and Welch's objections to See's evidence.

This appeal followed.

## ANALYSIS

In three issues, Restore and Welch argue that the trial court erred by denying their TCPA motion to dismiss, asserting that they established that (1) the TCPA applies to See's claims; (2) See failed to carry her burden of proof to establish a prima facie case; and (3) even if See had carried her burden, they are entitled to dismissal based on their affirmative defenses of limitations and immunity.

**Standard of Review**

We review de novo a trial court's ruling on a TCPA motion to dismiss, including whether each party has carried its respective burden under the TCPA. *See Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.) (stating that "[w]e review de novo whether each party carried its assigned burden"); *see also Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("We review de novo the denial of a TCPA motion to dismiss."). To determine whether the dismissal of a legal action is warranted, we "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We review the pleadings and evidence in the light most favorable to the nonmovant. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

**TCPA Framework and Purpose**

The TCPA's purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). The Texas Legislature has mandated

that the TCPA "shall be construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code § 27.011(b). To accomplish the statute's purpose, the Legislature established "a motion-to-dismiss procedure that allows defendants who claim that a plaintiff has filed a meritless suit in response to the defendant's proper exercise of a constitutionally protected right to seek dismissal of the underlying action, attorneys' fees, and sanctions at an early stage in the litigation." *Dolcefino*, 540 S.W.3d at 198 (citing Tex. Civ. Prac. & Rem. Code § 27.003(a); *Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 727 (Tex. App.—Dallas 2016, pet. denied)).

Our review of a trial court's ruling on a TCPA motion to dismiss requires a three-step analysis. *Youngkin*, 546 S.W.3d at 679 (describing three-step analysis under prior version of TCPA). As a threshold matter, the movant must demonstrate that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b) (requiring movant to demonstrate that legal action "is based on or is in response to" its exercise of protected rights); *see also Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). If the movant meets that burden, the nonmovant must establish by clear-and-specific evidence a prima facie case for each essential element of its claim. Tex. Civ. Prac. & Rem. Code § 27.005(c). If the nonmovant satisfies that requirement, the burden shifts back to the movant to establish "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law. *Id.* § 27.005(d).

## I.    Applicability of TCPA to See's Claims

Restore and Welch assert in their first issue that the trial court erred by denying their motion to dismiss, arguing that they satisfied their burden under the first step of the TCPA

analysis to demonstrate that See's legal action is based on or is in response to their exercise of the rights of free speech and to petition. *See id.* § 27.005(b). We first consider whether See's legal action is based on or in response to Restore and Welch's exercise of the right to petition.

The TCPA defines "[e]xercise of the right to petition" to mean the following:

(A) a communication in or pertaining to:

. . . .

    (ii) an official proceeding, other than a judicial proceeding, to administer the law; [and]

. . . .

    (B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding . . . .[4]

*Id.* § 27.001(4)(A)(1), (B). The Texas Legislature has authorized the Board to regulate the practice of nursing and to establish standards of professional conduct for licensed nurses. Tex. Occ. Code § 301.151(2), (3). As part of its duties, the Board is authorized to investigate complaints, initiate formal charges, and conduct formal and informal proceedings to determine whether to take disciplinary action against licensed nurses. *E.g.*, *id.* §§ 301.457-.459, .464. Restore and Welch contend that See's suit is based on or in response to their exercise of the right to petition because See's allegations in her petition rest on their communications with the Board in response to the

---

[4] "'Official proceeding' means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant. Tex. Civ. Prac. & Rem. Code § 27.001(8). "'Public servant' means a person elected, selected, appointed, employed, or otherwise designated as one of the following . . . : (A) an officer, employee, or agent of government . . . ." *Id.* § 27.001(9).

Board's subpoena issued in connection with its pending investigation of See's care of the patient, which later escalated to formal charges against See.

See bases all four of her claims for relief on Restore and Welch's allegedly defamatory statements and false statements of fact to the Board. She does not allege that Restore and Welch made defamatory or false statements to anyone other than the Board. Nor does she assert that Restore and Welch's communications to the Board do not satisfy the definition of "exercise of the right to petition." Instead, in response to Restore and Welch's argument, See contends that making knowingly false statements to the Board is not a legitimate exercise of Restore and Welch's right to petition.[5]

See's contention—that the TCPA does not apply to her claims because she alleges that Restore and Welch's communications with the Board were knowingly false—conflates the first and second steps of the TCPA analysis. As this Court has explained,

> [t]he statutory definitions for the exercise of the right of free speech and the exercise of the right to petition do not include language requiring us to determine the truth or falsity of communications [in our threshold determination of] whether a movant for dismissal has met its preliminary preponderance of the evidence burden under section 27.005(b).

*Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *5 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (analyzing TCPA's application under prior version

---

[5] She also asserts that the communications at issue do not arise from Restore and Welch's "choice to petition the government" because they "were merely responding to an investigation prompted by another party's exercise of the right to petition." Nothing in the TCPA requires protected communications to have been the result of the movant's choice. Here, the communications were made in response to the Board's subpoena and fit within the definitions of "exercise of the right to petition" relied upon by Restore and Welch as discussed in more detail below.

of statute and quoting *In re Lipsky*, 411 S.W.3d 530, 543 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied*, 460 S.W.3d 579 (Tex. 2015) (orig. proceeding)); *see also In re Lipsky*, 411 S.W.3d at 543 (explaining further that TCPA dictates that courts should review evidence concerning whether movants' statements were defamatory and thus actionable in second step of TCPA analysis); *cf. Hersh*, 526 S.W.3d at 467 (concluding that movant only had to demonstrate that nonmovant's legal action was based on movant's alleged communication—movant did not have to concede that communication actually occurred to invoke TCPA protection).

See also argues that her allegations that Restore and Welch withheld or altered documents responsive to the Board's subpoena constitute allegations of conduct, not protected communications under the TCPA. We disagree. The TCPA broadly defines "communication" as including "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code § 27.001(1). See's allegations that Restore and Welch withheld or altered documents are allegations about the completeness or accuracy of their "communication," i.e., "the making or submitting" of statements or documents to the Board. The definition of "communication" encompasses the conduct of making or submitting statements. *See, e.g.*, *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 690 n.4 (Tex. 2018) (construing TCPA commercial-speech exemption's reference to conduct and explaining it "necessarily refers to the 'communications' that constitute the defendant's 'exercise of the' rights of association, free speech, and to petition").

We conclude that Restore and Welch demonstrated that See's legal action was based on or in response to their exercise of the right to petition, and therefore, the TCPA applies to See's claims.[6] We sustain Restore and Welch's first issue.

## II. Prima Facie Case

In their second issue, Restore and Welch contend that See failed to establish by clear-and-specific evidence a prima facie case for each essential element of her claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). A "prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590. "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam)). In addition, the TCPA limits the type of evidence from which a prima facie case may be made to that evidence which is "clear and specific"—"clear" meaning "unambiguous," "sure or free from doubt," and "specific" meaning "'explicit' or 'referring to a particular named thing.'" *Id.* Thus, the term "'clear and specific evidence' refers to the quality of evidence required to establish a prima facie case, while the term 'prima facie case' refers to the amount of evidence required to satisfy the nonmovant's minimal factual burden." *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.).

The supreme court has concluded that the "clear and specific" evidentiary standard does not exclude circumstantial evidence from consideration. *In re Lipsky*, 460 S.W.3d at 589.

---

[6] Because we conclude that See's legal action is based on or in response to Restore and Welch's exercise of the right to petition, we need not reach the issue of whether her legal action was based on or in response to their exercise of the right of free speech. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

12

Circumstantial evidence is "indirect evidence that creates an inference to establish a central fact," and "[i]t is admissible unless the connection between the fact and the inference is too weak to be of help in deciding the case." *Id.* In some cases, the determination of certain facts "may exclusively depend on such evidence." *Id.*; *see, e.g.*, *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002) (considering defamation claim and noting that claims involving proof of defendant's state of mind "must usually [ ] be proved by circumstantial evidence"). "Conclusory statements and bare, baseless opinions are not probative and accordingly do not establish a prima facie case." *Long Canyon*, 517 S.W.3d at 222 (footnotes omitted). "Collectively, these elements require that a party 'provide enough detail to show the factual basis for its claim,' and thus effectively abrogate the utility of mere notice pleading as 'evidence' to that end." *Cavin v. Abbott*, 545 S.W.3d 47, 72 (Tex. App.—Austin 2017, no pet.) (quoting *In re Lipsky*, 460 S.W.3d at 590-91); *see also Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) ("Under the Act, more than mere notice pleading is required to establish a plaintiff's prima facie case."). With this framework in mind, we turn to the analysis of whether See has carried her burden for each of her claims.

### A.       See's Defamation Claims

Restore and Welch assert that See failed to establish a prima facie case for the essential elements of her defamation claims for libel per se and libel per quod.[7] To establish the elements of a defamation claim in this case, See must show that Restore and Welch (1) published a false statement of fact to a third party; (2) that defamed See; (3) while acting with negligence

---

[7] "Libel" is also termed "written defamation." *See Libel*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A defamatory statement expressed in a fixed medium, esp. writing but also a picture, sign, or electronic broadcast. . . . Also termed (in senses 1 & 2) *written defamation*."). We refer to See's claims as defamation claims.

(because See is a private person, not a public figure) regarding the truth of the statement; and (4) the statement caused damages, unless the statement constitutes defamation per se. *See In re Lipsky*, 460 S.W.3d at 593; *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Restore and Welch broadly contend that See failed to establish each of these elements.

"In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *In re Lipsky*, 460 S.W.3d at 591. "Defamation is generally defined as the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013) (citing W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS § 111, at 771 (5th ed. 1984 & Supp. 1988)); *see also* Tex. Civ. Prac. & Rem. Code § 73.001 (defining "libel" as a defamation in written or graphic form "that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation . . . and thereby expose the person to public hatred, ridicule, or financial injury."). Defamation per se involves "[a] statement that injures a person in her office, profession, or occupation," while "defamation *per quod* is defamation that is not actionable *per se*." *Hancock*, 400 S.W.3d at 64. Whether a statement is reasonably capable of a defamatory meaning from the perspective of an ordinary reader in light of the surrounding circumstances is a question of law, as is the determination of whether a statement is defamatory per se. *See id.* at 66.

### 1. Defamation per se

We first consider whether See established a prima facie case of defamation per se. See alleges in her petition that Restore's incident report sent to the Board "contained multiple

14

defamatory statements" against her. The statements that she identifies are statements that she was "acting outside of Restore protocol" when she used the pressure bag to administer the IV while the client was concurrently receiving compression therapy and that Restore's medical director's viewpoint was that "the adverse effects experienced by the client occurred due to the combination of concurrent administration of compression and heightened rate of IV infusion due to *non-compliant use of the pressure cuff*." (Emphasis added.) See alleges that these are false statements of fact and defamatory because her conduct was not outside of Restore's protocol, relying on a memo to staff that she contends "confirms that the use of pressure bags was in a previous version of [Restore's] nursing manual and their use was not outside of Restore protocol" and the fact that Restore had pressure cuffs available for use.[8] In addition, she attested that when she started employment, during her orientation, "the use of pressure bags was described as a way to work around the fact that [Restore] did not use a larger gauge for the IV needle." She also asserts that Restore's statements about counseling her that her conduct was outside of protocol and that she was placed on leave were false and defamatory.

We need not address whether See established a prima facie case of the falsity of the statements because we disagree with See that the challenged statements are defamatory per se. "Disparagement of a general character, equally discreditable to all persons, is not enough unless

---

[8] The February 7, 2020 Slack message, which is directed to "leadnurses," from Lexi Siojo, NP, states:

> Hey guys, just wanted to mention that our standing orders do not indicate the use of pressure bags. Please let your nurses know that we cannot use this in our store and please remove these from your stores if you have any. I believe that in the past, this was added in our list of medical supplies, but this was before my time and I don't believe that we ever discussed it. Please give me a thumbs up if you have read this message. I will be expecting acknowledgment from every store! Thanks guys!

15

the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Bedford*, 520 S.W.3d at 905 (quoting Restatement (Second) of Torts § 573 cmt. e (cited approvingly in *Hancock*, 400 S.W.3d at 67)). Statements disparaging See for not complying with her employer Restore's protocol or asserting that Restore had suspended her during its investigation are not the disparagement of a character or quality that is essential to the occupation of being a nurse. *See Hancock*, 400 S.W.3d at 67 (holding that statements that physician "lacked veracity and dealt in half-truths" were not defamatory per se because they did not injure him in his profession by accusing him "of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession"). If a statement that an employee failed to follow her employer's protocol is defamation per se, then it would likewise be defamation per se for any other business that relies on protocols. Similarly, a statement that an employer suspended or terminated an employee during an investigation of possible wrongdoing after a complaint had been filed by a client would be defamation per se for any other business if it is defamation per se here. And as the Texas Supreme Court explained in *Bedford*, "that cannot be." 520 S.W.3d at 905 (referring to its similar analysis in *Hancock* and concluding that statements that youth-baseball business failed to prevent coach from having extramarital affair and did not handle situation properly after affair was discovered did not constitute defamation per se).

One of See's exhibits to her TCPA response demonstrates why Restore and Welch's statements do not constitute defamation per se. The exhibit is a May 12, 2020 letter and agreed order from the Board.[9] The Board gave See the option of signing the agreed order and completing

---

[9] See alleges that Welch sent the documents containing defamatory statements, including the incident report, to the Board on or about May 10, 2020.

16

a "Knowledge, Skills, Training, Assessment and Research Program" at her own expense in lieu of requesting an informal conference or facing the filing of formal charges and a possible public disciplinary hearing. The proposed agreed order stated that "[i]nformation received by the Board produced evidence that [See] may be subject to discipline pursuant to Section 301.452(b)(10) & (13), Texas Occupations Code." Section 301.452 provides as follows:

> (b)      A person is subject to denial of a license or to disciplinary action under this subchapter for:
>
> . . . .
>
>      (10)      unprofessional conduct in the practice of nursing that is likely to deceive, defraud, or injure a patient or the public;
>
> . . . .
>
>      (13)      failure to care adequately for a patient or to conform to the minimum standards of acceptable nursing practice in a manner that, in the board's opinion, exposes a patient or other person unnecessarily to risk of harm.

Tex. Occ. Code § 301.452 (prior version).[10] In other words, the Board did not investigate the complained-of incident or inform See that she might be subject to discipline based on her alleged failure to follow Restore's protocol about pressure cuffs—instead, the Board had preliminarily concluded that she might be subject to discipline for *unprofessional conduct in the practice of nursing* that was likely to injure a patient and for failing to care adequately for a patient or to conform to the minimum standards of acceptable nursing practice. Even if Restore's protocol

---

[10] Section 301.452 was amended in 2021, and former Subsection (b)(13) is now Subsection (b)(14). *See* Act of May 19, 2021, 87th Leg., R.S., ch. 251, § 3, sec. 301452(b), 2021 Tex. Gen. Laws.

allowed the use of pressure cuffs, as See alleged, See was still required to use her own professional judgment to determine whether a pressure cuff should have been used in the situation at issue. Restore and Welch's statement that her use of the pressure cuff was non-compliant with Restore's protocol is not a statement asserting that See "lack[s] a peculiar or unique skill that is necessary for the proper conduct of the profession."[11]  *Hancock*, 400 S.W.3d at 67 (citing Restatement (Second) of Torts § 573 cmt. c, e (1977)).  We conclude that the complained-of statements were not defamatory per se.

## 2. Defamation per quod

We turn next to See's claim of defamation per quod and consider whether she has established a prima facie case for the element of damages.  *See id.* at 65-66 (explaining that while plaintiff may recover nominal damages for defamation per se, only actual damages and exemplary damages are potentially recoverable for statements that are defamatory but not defamatory per se). In her petition, See sought damages of $1,000,000, requesting both compensatory damages (for economic and non-economic losses) and exemplary damages.  "Under the [TCPA], 'the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the

---

[11]  The Restatement section relied on by the Texas Supreme Court also notes in the comment discussing a "single act" that

> [a] statement imputing a single mistake or act of misconduct in office or in the conduct of a business or profession is actionable under the rule stated in this Section only if the act fairly implies an habitual course of similar conduct, or the want of the qualities or skill that the public is reasonably entitled to expect of persons engaged in such a calling.

RESTATEMENT (SECOND) OF TORTS § 573 cmt. d (1977).  The challenged statements do not fairly imply a habitual course of similar conduct by See or that she lacks qualities or skill that the public is reasonably entitled to expect of a nurse.

18

defendant's conduct.'" *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 202 (Tex. 2023) (quoting *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 848 (Tex. 2018)). See must present evidence sufficient to support a rational inference that she "suffered *some* specific, demonstrable injury attributable to" Restore and Welch's statements. *Id.*

The only evidence before the trial court on damages was the following three paragraphs in See's affidavit:

> 26. As a direct result of [Restore's] defamatory statements, I have been unemployable because charges were filed against my license. I have been unable to work as a registered nurse.

> 27. As a direct result of [Restore's] defamatory statements, I lost an existing contact [sic] with NuWest Travel Nursing which earned me approximately $4,000 per week.

> 28. As a direct result of [Restore's] defamatory statements, I have been unable to secure any future contracts as a registered nurse that I was regularly able to obtain based on my experience. My estimated losses are approximately $128,000 per year.[12]

_____

[12] Although See proffered documentary evidence purporting to support these statements, the trial court sustained Restore and Welch's objection that these documents were not properly authenticated. The proffered evidence included (1) the Board's letter notifying her that it filed formal charges against her on November 9, 2020; (2) screenshots from NuWest Travel Nursing advertising various positions and salaries; and (3) an exhibit containing a May 14, 2021 letter from NuWest Group; a document that appears to be See's estimate of her damages; and a print-out titled "Texas Board of Nursing Primary Source License Verification" stating that formal charges had been filed by the Board against See on November 9, 2020, and that "[t]his is not a disciplinary action. It is a charging document that has not been proven." The May 14, 2021 letter from NuWest Group stated that it was enclosing a "consumer report that NuWest Group requested in connection with your application for employment with our company," that it was considering taking action based on the report and offering See the opportunity to provide additional information before "mak[ing] our hiring determination based on the information currently available to us," and that it would notify her if an adverse employment action was taken. See did not include any notification of an adverse employment action with the proffered documents.

19

These statements are conclusory and thus do not satisfy the TCPA's requirement of clear-and-specific evidence. *See Long Canyon*, 517 S.W.3d at 222 n.44 (explaining that "conclusory" statements express "a factual inference without stating the underlying facts on which the inference is based" (quoting *Conclusory*, Black's Law Dictionary (10th ed. 2014)). See's affidavit is "devoid of any specific facts illustrating how" Restore and Welch's statements about See actually caused the alleged losses; instead, she merely avers in general terms that the statements caused her losses. *In re Lipsky*, 460 S.W.3d at 593 (citing *e.g.*, *Burbage v. Burbage*, 447 S.W.3d 249, 262 (Tex. 2014), for proposition "that a jury could not reasonably infer that cancellations for a funeral home business were caused by defamation when any number of reasons could have caused the cancellations"). Restore's statements in the incident report and its subpoena response were made to the Board in the context of the Board's investigation of a specific complaint made against See. See's affidavit does not explain how or whether any other employer would have obtained those documents. *See id.* at 591 ("[A] plaintiff must provide enough detail to show the factual basis for its claim."). It merely offers her opinion that these statements must be the reason that NuWest discontinued her employment and that she was unable to secure any other employment. On this record, it is not reasonable to infer that Restore and Welch's allegedly defamatory statements caused any other employer to discontinue her employment or to not hire her.[13] *See, e.g.*, *In re*

---

[13] On motion for rehearing, See urges that her evidence of damages here is more like the evidence of damages that the Texas Supreme Court found sufficient to survive a TCPA motion in *USA Lending Group, Inc. v. Winstead PC*, 669 S.W.3d 195, 202 (Tex. 2023), and in *S & S Emergency Training Solutions, Inc. v. Elliott*, 564 S.W.3d 843, 848 (Tex. 2018), than the evidence it found insufficient in *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015) (orig. proceeding). We disagree. In both *USA Lending Group* and *Elliott*, the evidence in the record supported a rational inference that the defendant's actions in each case had caused the plaintiff to lose some specific, demonstrable amount. *USA Lending*, 669 S.W.3d at 202-04 (concluding that client in legal-malpractice suit established through expert opinions that firm's failure to request monetary damages in motion for default judgment resulted in loss of judgment for some specific amounts

20

*Lipsky*, 460 S.W.3d at 592-93. Therefore, we conclude that See's unsubstantiated opinions do not constitute the clear-and-specific evidence required to establish a prima facie case.[14]

### B.    See's Tortious-Interference Claims

Restore and Welch also assert that See has failed to establish a prima facie case for each essential element of her tortious-interference claims. To establish a claim for tortious interference with an existing contract, a plaintiff must establish (1) the existence of a valid contract subject to interference, (2) that the defendant willfully and intentionally interfered with the

that could have been collected); *Elliott*, 564 S.W.3d at 848 (concluding that plaintiff established that defendant's disclosures of confidential information resulted in plaintiff's loss of accreditation and loss of ability to offer paramedic-education program that *defendant* had acknowledged was profitable and that "lost revenues were susceptible to calculation with reasonable certainty"). In this case, See has not provided evidence that supports a rational inference that Restore and Welch's actions caused her to lose some specific, demonstrable amount.

See acknowledges that the investigation was triggered by a patient complaint, not by Restore and Welch's allegedly defamatory statements, but she argues that those statements were damaging in their own right because they "likely prolonged the investigation." See further asserts that "the pending investigation, by itself, posed a hazard to her employment prospects" (based on the May 14, 2021 letter from NuWest that the trial court did not admit) and argues that thus it was "unnecessary for potential employers to hear the precise defamatory statements made by" Restore and Welch—knowledge of the investigation "fed by the defamatory statements" was enough. As explained in the discussion of defamation per se, the complained-of statements did not disparage a character or quality that is essential to the occupation of being a nurse, and thus, we conclude it is not reasonable to infer these statements "likely prolonged" the Board's investigation.

[14] As part of their argument in support of their issue asserting that See did not establish a prima facie case for her claims, Restore and Welch contend that the trial court erred by not sustaining all of their objections to See's evidence proffered in support of her response to their TCPA motion, in part asserting that her evidence failed to satisfy the requirements of Texas Rule of Civil Procedure 166a. See responds that the TCPA does not require affidavits to comply with Rule 166a. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a). Because we conclude that the relevant portions of See's affidavit are conclusory and therefore do not satisfy the TCPA's requirement that "affidavits stat[e] the facts on which liability or defense is based," *id.*, we need not address this argument or Restore and Welch's other arguments about the admissibility of See's evidence. *See* Tex. R. App. P. 47.1.

21

contract, (3) that the interference proximately caused the plaintiff's injury, and (4) that the plaintiff incurred actual damage or loss. *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). Intentional interference does not require intent to injure, only that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* (quoting *Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)). Similarly, to recover for tortious interference with a prospective business relationship, a plaintiff must establish the following elements: (1) a reasonable probability that the plaintiff and a third party (or parties) would have entered into a business relationship, (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring, (3) the defendant committed that act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct, and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 679 (Tex. App.—Dallas 2004, pet. denied) (explaining that this formulation of elements has been adopted by courts of appeals subsequent to Texas Supreme Court's decision in *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)).

See argues on appeal that she has established by clear-and-specific evidence that she lost an existing contract and was unable to obtain prospective contracts "as a direct result of the Board of Nursing investigation triggered by [Restore and Welch's] false statements to the Board." We note that See neither alleged nor attested in the trial court that the Board's investigation was triggered by Restore and Welch's statements—instead, her own chronology of facts stated that the complained-of statements were made by Restore and Welch *after* the Board began investigating her because a complaint had been filed about the incident. In addition, See relies on the same

22

paragraphs in her affidavit that she relied on for her defamation claims as evidence of damages for her tortious-interference claims. For the reasons explained above, her opinions that Restore and Welch's allegedly defamatory statements must be the reason that NuWest discontinued her employment and that she was unable to secure any other employment do not provide any underlying facts to support the inferences See asks the Court to make. Accordingly, we conclude that See has failed to establish a prima facie case on the element of damages for her tortious-interference claims.

Having determined that See failed to establish a prima facie case on each essential element of her claims, we sustain Restore and Welch's second issue.[15]

## CONCLUSION

Because we hold that See did not carry her burden to establish a prima facie case for each essential element of her claims as required by the TCPA, we reverse the trial court's order denying Restore and Welch's motion to dismiss and remand the case to the trial court for dismissal and further proceedings under the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a).

_____
Gisela D. Triana, Justice

Before Justices Baker, Triana, and Theofanis

Reversed and Remanded On Motion for Rehearing

Filed: September 29, 2023

---

[15] Because See did not carry her burden under the second step of the TCPA analysis, we need not address Restore and Welch's third issue asserting that they are entitled to dismissal of the lawsuit based on their affirmative defenses. *See* Tex. R. App. P. 47.1.